UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDUARDO GARZA MORA,<br><br>    Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY,<br><br>    Defendant. | Civil Action No.: **05 11651 NMG**<br><br>RECEIPT # 66142<br>AMOUNT $ 250.00<br>SUMMONS ISSUED NA<br>LOCAL RULE 4.1 ✓<br>WAIVER FORM __<br>MCF ISSUED ✓<br>BY DPTY. CLK. MP<br>DATE 8/9/2005 |

MAGISTRATE JUDGE __JLA__

### NOTICE OF REMOVAL

Defendant The Gillette Company ("Gillette") files this Notice of Removal and hereby removes the above-captioned action to the United States District Court for the District of Massachusetts. As grounds for the removal of this action, Gillette states:

1. On or about July 7, 2005, Eduardo Garza Mora commenced this action against Gillette by filing a complaint in the Massachusetts Superior Court entitled <u>Mora</u> v. <u>The Gillette Company</u>, Suffolk Superior Court, Civil Action No. 05-2795A (the "Complaint"), a copy of which is attached.

2. The Complaint and Summons were served on the Defendant by hand on or about July 12, 2005.

3. This Notice of Removal is filed within 30 days after receipt by Defendant of a copy of the Summons and Complaint, and is timely pursuant to 28 U.S.C. § 1446(b).

4. In his Complaint, Plaintiff alleges that Defendant discriminated against him on the basis of national origin in violation of federal law under 42 U.S.C. § 2000e and 42 U.S.C. § 1981.

9783604_1

5.  This Court would have had original jurisdiction over these claims pursuant to 28 U.S.C. § 1331. Accordingly, the action is removable to this Court under 28 U.S.C. § 1441(b).

6.  A copy of all the process, pleadings and orders served upon the Defendant in this action is attached hereto and filed herewith.

Respectfully submitted,

THE GILLETTE COMPANY

By its attorneys,

/s/ Anthony D. Rizzotti
Anthony D. Rizzotti (BBO# 561967)
Christine A. Phipps (BBO# 658942)
Ropes & Gray LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Date: August 9, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand

8/9/05  Christine Phipps

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 05-2795A

Eduardo Garza Mora , Plaintiff(s)

v.

The Gillette Company , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon   Law Offices of Neil Osborne, P.C.   plaintiff's attorney, whose address is   41 West Street 7th Fl Boston MA  , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Barbara J. Rouse**, Esquire, at Boston, the   7th   day of   July  , in the year of our Lord two thousand   05  .

*Michael Joseph Donovan*
Clerk/Magistrate

A true copy Attest:
7-12-05 Deputy Sheriff Suffolk County

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   ((1) TORT) — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev.

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                                    Superior Court
                                                Civil Action No.:

                                                05-2795-A

| | |
|---|---|
| EDUARDO GARZA MORA ) | |
| Plaintiff, ) | |
| ) | **PLAINTIFF'S COMPLAINT** |
| vs. ) | **AND JURY DEMAND** |
| ) | |
| THE GILLETTE COMPANY ) | |
| Defendant ) | |

## I. - INTRODUCTION

1. The Plaintiff, Eduardo Garza Mora ("Plaintiff"), an employee of The Gillette Company ("Defendant"), has filed this Civil Action Complaint against the Defendant for employment discrimination based on national origin.

## II. - JURISDICTION

2. This Honorable Court has jurisdiction over all counts in this matter pursuant to M.G.L. c. 212 § 4, M.G.L. c. 231, et seq.

## III. - PARTIES

3. The Plaintiff, Eduardo Garza Mora, currently resides at 3 Frost Circle, Wellesley, Massachusetts 02482, and is therefore subject to the jurisdiction of this Court.

4. The Defendant, the Gillette Company, is a corporation with its principal place of business located at the Prudential Tower Building, Boston, Massachusetts 02199, and is therefore subject to the jurisdiction of this court.

## IV. - FACTS

1. Plaintiff Eduardo Garza Mora is a Mexican male.

2. The Plaintiff is fluent in the English, French, and Spanish languages.

3. In 1981, the Plaintiff, as class Valedictorian, earned his Bachelor's degree with honorific mention from the *Universidad del Valle de Atemajac* in Guadalajara, Mexico.

4. In 1983, the Plaintiff earned a Diploma in Business Policy from *Le Centre d'Etudes Superieures des Affaires* in Jouy-en-Josas, France.

5. In 1984, Plaintiff earned a Diploma in Strategy and Business Policy from *Le Centre d'Etudes Superieures des Affaires/ L'Ecole des Hautes Etudes Commerciales* in Jouy-en-Josas, France.

6. In 1990, the Plaintiff completed his Master of Advanced Management studies at the *Colegio de Graduados en Alta Direccion* in Mexico City, Mexico.

7. In November 1987, the Defendant hired the Plaintiff as a Business Planning Manager in its Mexico location.

8. Shortly after the Plaintiff began employment with the Defendant, Claudio Ruben, a Company Director informed the Plaintiff that he was the "wrong nationality" to advance in the company because he was not of Argentinean, Colombian, or Brazilian ancestry, but of Mexican ancestry.

9. On another occasion, Claudio Ruben informed the Plaintiff that although the Plaintiff was best prepared to become Controller of Gillette Mexico, there was pressure on him to give an Argentinean candidate the position.

10. Mr. Ruben subsequently offered the Controller position to the non-Mexican candidate.

11. Based on previous conversations he had with the Company Director, the Plaintiff reasonably believed that he was not offered the position of Controller because he was of Mexican ancestry, as opposed to Argentinean, Colombian, or Brazilian ancestry.

12. The Plaintiff complained about this treatment in a meeting with Frank O'Connell, the Vice President of Human Resources for Gillette Latin America.

13. In this meeting, Mr. O'Connell emphasized how a candidate's nationality is considered during the selection process and that a person with a Mexican passport was given negative consideration.

14. On a different occasion, Jorge Micozzi, the President of Gillette for the Defendant's Latin American offices asked the Plaintiff "Are all Mexicans incompetent or is it just that Gillette can't find good ones?"

15. Based on the comments of Frank O'Connell and Jorge Micozzi, and the comments Claudio Ruben, the Plaintiff reasonably believed that some of the Defendant's employees held negative stereotypes about Mexicans.

16. Mexico is one of the Defendant's largest markets.

17. The positions of Group President, Group Marketing Director, and Group Finance Director are key positions at the Gillette Latin American Group, yet a Mexican has not occupied any of these positions for many years.

18. In January 1991, the Plaintiff earned a transfer with the Defendant to the position of Senior Financial Analyst.

19. On or about January 20, 1993, consistent with past performance, the Plaintiff received an exceptional performance evaluation praising his initiative, focus on customer needs, people skills, and awareness for improving performance.

20. In February 1993, the Plaintiff earned a promotion with the Defendant to the position of Financial Planning Manager.

21. In December 1993, the Plaintiff earned a promotion with the Defendant to the position of Controller (Director of Finance).

22. On or about January 5, 1994, again consistent with past performance, the Plaintiff received an exceptional performance evaluation praising his intelligence, dedication to his job, sense of responsibility, and business sense.

23. Between the years of 1993-2002, the Plaintiff held three different positions as Controller/Director of Finance for Defendant, working in various geographical locations such as Colombia, Turkey, and Mexico.

24. On or about March 15, 2002, the Plaintiff received a positive performance evaluation praising his strategic leadership, drive for results, alignment of performance for success, and success in building a successful team.

25. On or about March 15, 2002, the Plaintiff expressed an interest to become financially responsible for one of the Defendant's larger groups or regions, including the position of Vice President of Finance for Gillette Latin America.

26. The Plaintiff's credentials and experience were similar to those of previous employees promoted to the position of Vice President of Finance for Gillette Latin America.

27. Despite the Plaintiff's credentials, Thomas Madsen, an outside American candidate, was appointed Vice President of Finance for Gillette Latin America.

3

28. In April 2002, based on his experience and education, the Plaintiff was chosen to direct the Defendant's Project Renaissance.

29. To the best of his knowledge, the Plaintiff was the only member of the Renaissance Project who did not receive a growth promotion with his appointment to the project.

30. During his tenure as Director of Project Renaissance, the Plaintiff was present on several occasions when other employees made discriminatory comments about people of Latin origin.

31. The Defendant's senior management was aware of Mr. Piscatelli's harassing comments and behavior and discussed removing him from the project; however, Joe Schena intervened to prevent Mr. Piscatelli's removal from the project.

32. The Plaintiff requested that senior management send a written warning letter to Mr. Piscatelli, but senior management refused the Plaintiff's request.

33. Even before working with the Plaintiff, Gary Piscatelli told Claudio Ruben that the plaintiff was unworthy to be his boss.

34. Joseph Schena informed Plaintiff that Mr. Piscatelli had a problem working on the project because he "is having to deal with two Latinos" [the Plaintiff and the Plaintiff's supervisor].

35. On or about May 1, 2003, Gary Piscatelli's dislike for persons of Latin descent was evidence during a meeting in which he slammed his open hand on the table.

36. During a business lunch with the Plaintiff and Mr. Ruben, Rick Lees, another member of the Financial Leadership team made derogatory comments, about immigrants, specifically Latinos, arriving in America.

37. After this lunch, the Plaintiff informed Mr. Ruben that the employee's comments offended him; Mr. Ruben commented that the Plaintiff was being too sensitive.

38. In 2003, during his tenure as Director of Project Renaissance, the Plaintiff expected to be identified as a future company leader due to his work on the Renaissance Project and his successful completion of past projects.

39. On or about July 10, 2003, James M. Kilts, the Defendant's Chairman and Chief Executive Officer, issued a letter regarding Project Renaissance's achievements, acknowledging certain elements in which the Plaintiff played a key role.

40. The Defendant has a process, executed by the Financial Leadership Team, for identifying and developing financial talent in its company.

41. Employees that meet the requirements of the Financial Leadership Team are identified as Next Generation Leaders, or N.G.L.s.

42. When evaluating a potential N.G.L., the Financial Leadership Team particularly considers a candidate's employment performance, talent development, and leadership competencies.

43. When determining leadership competencies, the Financial Leadership Team considers skills such as building a successful team, drive for results, and strategic leadership.

44. When evaluating a potential N.G.L.'s employment performance, the Financial Leadership Team considers the candidates previous performance evaluations.

45. For several years, the Plaintiff's performance evaluations have been extremely positive, and his supervisors have consistently rated his competencies above the company average.

46. When evaluating a candidate's talent development skills, the Financial Leadership Team considers how a candidate influences the careers of other employees.

47. During his seventeen years of employment with Defendant, the Plaintiff has significantly influenced the careers of numerous employees in the areas of career advancement, coaching, and hiring.

48. In 2003, the Plaintiff attended a meeting where he was informed that he had not been chosen to be an N.G.L.

49. In that meeting, the Plaintiff's supervisor informed Plaintiff that he would need to improve his accent for consideration for an N.G.L. position.

50. In a subsequent evaluation, the Plaintiff's supervisors stated that "to gain high impact," he needed to develop his communication skills by improving his "accent and fluency" and that the company would assist him via "formal feedback from his manager."

51. Based on his supervisor's comments and his evaluations, and the fact that he met all stated N.G.L. requirements but was not chosen to be an N.G.L., Plaintiff reasonably believes that he was not chosen to be an N.G.L. because of his national origin.

52. The Plaintiff complained to his supervisor that the feedback received from the Financial Leadership Team had not been based on factors such as performance, influence, or leadership, but instead were based on factors such as the Plaintiff's Mexican accent.

53. A consultant, hired by the Defendant, who was working with the Plaintiff's supervisor, informed the Plaintiff that his executive presence and public persona were influenced by his Latin American culture and that Plaintiff's culture was different than American culture.

54. Based on his conversations with his supervisor and the Defendant's hired consultant, the Plaintiff reasonably believed that he was not chosen to be an N.G.L. because of his adherence to his Mexican culture.

55. The Plaintiff informed Human Resources of his disturbing conversations with the consultant.

56. On or about February 5, 2004, the Plaintiff received a positive performance evaluation praising his strengths in building a successful team, strategic leadership, drive for results, and customer focus.

57. On or about February 9, 2004, the Plaintiff met with Kalpana Shunmugham, one of Defendant's Human Resource Consultants and expressed concern over the discriminatory treatment, based on national origin, that he was experiencing.

58. During this meeting, the Plaintiff articulated several examples of discriminatory treatment by several of the Defendant's employees, including discriminatory treatment by supervisors.

59. On or about February 26, 2004, the Plaintiff met with Asad Husain, one of Defendant's Directors of Human Resources to discuss the discriminatory treatment that the Plaintiff was experiencing.

60. During this meeting, the Plaintiff articulated several examples of discriminatory treatment by several of the Defendant's employees, including discriminatory treatment by supervisors.

61. Mr. Husain responded to the Plaintiff during a meeting that the Plaintiff's complaints about workplace discrimination could be read as "cowardly."

62. On or about March 5, 2004, the Plaintiff submitted his resume and a list of achievements for consideration for the position of Oral-B's Vice President of Finance.

63. The Plaintiff had first-hand experience working with Oral-B, including but not limited to: the financial set-up of Oral-B manufacturing operations, temporary responsibility for a team managing Oral-B sales in Colombia, and management of Oral-B's P&L.

64. The Plaintiff had also executed a very impressive collection program for Oral-B.

65. The Plaintiff was well qualified for the position because while employed by Gillette Colombia, Plaintiff was approached by Mario Mariasch to become Finance Director for Oral-B Latin America and AMEE, but the offer never materialized due to other company priorities.

66. On or about May 15, 2004, a less qualified non-Mexican candidate was hired for the position of Oral-B's Vice President of Finance.

67. On or about July 13, 2004, Plaintiff had a meeting with a member of senior management regarding his assignment and career aspirations.

68. During this meeting, the Plaintiff expressed his expectations that he would receive a promotion to either the position of Vice President of Finance for Latin America or to the position of Vice President of Finance.

69. Plaintiff's expectation that he would receive a promotion was reasonably based on his excellent work history with Defendant and the fact that five people had previously been directly promoted to similar positions from jobs previously held by the Plaintiff.

70. During this meeting, the senior manager informed the Plaintiff that his chance of a promotion to the position of Vice President of Finance was extremely unlikely.

71. Based on the facts of his previous experiences with discrimination in the Defendant's company, and the fact that he was unlikely to be promoted despite his qualifications, the Plaintiff reasonably believed that he was being discriminated against based on his national origin.

72. Plaintiff and his supervisor, the only high-level Latinos working on the Renaissance Project, were later removed from the Renaissance Project.

73. After his removal from Project Renaissance, the Plaintiff was transferred to a temporary position with the Defendant's Shared Services Center; the position involved no supervisory responsibility.

74. The Plaintiff's removal from the Renaissance Project occurred after his meeting with Human Resources regarding the disparate treatment that he had experienced during his employment with the Defendant.

75. On or about July 15, 2004, the Plaintiff filed a formal discrimination complaint with the Defendant's Workforce Diversity with Dawn Frazier-Bohnert.

76. On or about August 6, 2004, Ms. Frazier-Bohnert informed the Plaintiff that Mike Estrada, another Human Resources Officer was to launch an investigation into the Plaintiff's discrimination complaints.

7

77. On or about August 30, 2004, the Plaintiff handed over a letter to the Defendant's Chairman and Chief Executive Officer about the discrimination he had experienced.

78. On or about December 9, 2004, the Plaintiff filed a complaint against the Defendant with the Massachusetts Commission Against Discrimination, alleging that the Defendant discriminated him based on the basis of his national origin.

79. On or about March 18, 2005, the Plaintiff withdrew his complaint with the Massachusetts Commission Against Discrimination to file this civil action.

80. As a result of the Defendant's conduct, the Plaintiff has suffered damages, including, but not limited, to including lost wages, lost benefits, lost bonuses, and mental and emotional distress.

## V. - CAUSES OF ACTION

### COUNT ONE
### Violation of M.G.L. Chapter 151B

81. Paragraphs 1-80 are hereby incorporated by reference as if set forth directly herein.

82. The above-stated actions and omissions of Defendant constitute direct violations of M.G.L. Chapter 151B § 4.

83. As a direct and proximate result of its above-stated acts and omissions, Defendant deprived Plaintiff of economic and non-economic benefits, including but not limited to: lost wages and employment benefits, and has caused the Plaintiff pain and suffering, mental anguish, humiliation, and embarrassment.

84. Defendant's conduct was willful, wanton, and designed to deprive Plaintiff of his rights under M.G.L. Chapter 151B.

### COUNT TWO
### Violation of Title VII, 42 U.S.C. § 2000e

85. Paragraphs 1-84 are hereby incorporated by reference as if set forth directly herein.

86. The above-stated discriminatory acts by Defendant, its agents, and employees violate Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e.

87. As a direct and proximate result of its above-stated acts and omissions, the Defendant deprived the Plaintiff of economic and non-economic benefits,

including but not limited to lost wages, and suffered pain and suffering, mental anguish, humiliation, and embarrassment.

88. The Defendant's conduct was willful, wanton, and designed to deprive the Plaintiff of his rights under Title VIII, 42 U.S.C. § 2000e.

## COUNT THREE
### Violation of 42 U.S.C. § 1981

89. Paragraphs 1-88 are hereby incorporated by reference as if set forth directly herein.

90. The above-stated discriminatory acts by the Defendant, its agents, and employees violate Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

91. As a direct and proximate result of its above-stated acts and omissions, the Defendant has deprived the Plaintiff of economic and non-economic benefits, including but not limited to lost wages, and suffered pain and suffering, mental anguish, humiliation, and embarrassment.

92. The Defendant's conduct was willful, wanton, and designed to deprive the Plaintiff of his rights under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## COUNT FOUR
### Intentional Infliction of Emotional Distress

93. Paragraphs 1-92 are hereby incorporated by reference as if set forth directly herein.

94. Defendant, acting through its agents and employees, engaged in the acts previously described deliberately and intentionally in order to cause Plaintiff severe emotional distress; alternatively, plaintiff alleges that such conduct was done in reckless disregard of the probability of such conduct causing him sever emotional distress.

95. The foregoing conduct did in fact cause Plaintiff to suffer extreme and severe emotional distress. As a proximate cause of such conduct, the Plaintiff suffered embarrassment, anxiety, humiliation and emotional distress, and will continue to suffer emotional distress in an amount in excess of the minimum jurisdiction of this honorable Court, the precise amount of which will be proven at the time of trial.

96. The Defendant committed the acts maliciously, fraudulently, and oppressively, with the wrongful intention of injuring the Plaintiff, and acted with an improper and evil motive amounting to malice in conscious disregard of the Plaintiff's

rights. Because the actions taken toward the Plaintiff were carried out by the Defendant's employees, including managerial employees, acting in a despicable, cold, callous, and intentional manner designed to injure and damage the Plaintiff, he is entitled to recover punitive damages from the Defendant, in an amount according to proof.

### COUNT FIVE
#### Tortious Interference with Employment Relationship

97. Paragraphs 1-96 are hereby incorporated by reference as if set forth directly herein.

98. The Defendant, through its employees, officers, and agents, acted with actual malice in conspiring to discharge the Plaintiff form his position of Director of Project Renaissance.

99. As a direct and proximate result of the above-stated acts and omissions of the Defendant, the Plaintiff has been deprived of economic and non-economic benefits including but not limited to: lost wages, lost benefits, bonuses, and vacation benefits; moreover, the Plaintiff has suffered mental and emotional distress.

WHEREFORE, Plaintiff requests that this honorable Court enter judgment against the Defendant as follows:

1. Enter a declaratory judgment that the acts and practices complained of herein are in violation of the laws of the United States and the Commonwealth of Massachusetts, and constitute intentional or negligent infliction of emotional distress upon the plaintiff.

2. Permanently enjoin Defendants, their agents, successors, employees, and those acting in concert with them, from engaging in each of the unlawful practices, policies, usages, and customs set forth above.

3. Direct Defendant to make Plaintiff whole for all earnings he would have received but for Defendant's discriminatory and tortious treatment including, but not limited to:

4. Direct Defendant to offer to the Plaintiff the next available position of Vice President of Finance.

5. Award the Plaintiff compensatory damages, including lost wages, lost benefits, bonuses, vacation benefits, mental and emotional distress and other special and general damages according to proof.

6. Award punitive damages for those counts that allow for such a remedy.

10

7. Award interest, including pre-judgment interest, at the current legal rate.

8. Award the Plaintiff the suit costs incurred on all causes of action.

9. Award the Plaintiff the costs of this action, together with reasonable attorney's fees, as provided by M.G.L. Chapter 151B.

10. Award the Plaintiff any other relief that this honorable Court deems just, proper, and necessary.

11. Award full and fair monetary damages in an amount to be proven at trial to compensate Plaintiff for the mental anguish, humiliation, pain and suffering, and such other damages as resulted from the improper conduct of the defendants.

## JURY DEMAND

The Plaintiff demands a jury to hear and decide all issues of fact.

Respectfully Submitted,
Plaintiff, by His Attorney

Neil Osborne (BBO #567674)
41 West Street, 7th Floor
Boston, MA 02111-1216
Phone (617) 482-1160
Fax (617) 482-1166

Dated: July 7, 2005

11

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                                 SUPERIOR COURT

EDUARDO GARZA MORA,           )
                              )
            Plaintiff,        )
                              )
    vs.                       )
                              )  Civil Action No.   05-2795A
THE GILLETTE COMPANY,         )
                              )
            Defendant.        )
                              )

### DEFENDANT'S ASSENTED-TO MOTION
### TO EXTEND TIME TO FILE A RESPONSIVE PLEADING

Defendant The Gillette Company, with the assent of Plaintiff's counsel, hereby moves this Court to extend the time for Defendant to file its Answer or other responsive pleading to and including August 15, 2005.

Assented to:                                         THE GILLETTE COMPANY

                                                     By its attorneys,

_____                       _____
Neil Osborne (BBO# 567674)                           Anthony D. Rizzotti (BBO# 561967)
41 West Street, 7th Floor                            Christine A. Phipps (BBO# 658942)
Boston, MA 02111-1216                                ROPES & GRAY LLP
(617) 482-1160                                       One International Place
                                                     Boston, MA 02110-2624
                                                     (617) 951-7000

Dated: July 28, 2005                                 Dated: July 31, 2005

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand

Date 8/1/05   Christine A Phipps

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Eduardo Garza Mora

**DEFENDANTS**
The Gillette Company

(b) County of Residence of First Listed Plaintiff  Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Neil Osborne
41 West Street, 7th Floor, Boston, MA 02111

Attorneys (If Known)
Anthony D. Rizzotti, Ropes & Gray LLP
One International Place, Boston, MA 02111

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

05 11651 NMG

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Section 2000e
Brief description of cause:
employment discrimination

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 8/5/05
SIGNATURE OF ATTORNEY OF RECORD
[signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)  Eduardo Garza Mora v. The Gillette Company

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

    ☐   I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

    ☒   II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.         for patent, trademark or copyright cases

    ☐   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

    ☐   IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

    ☐   V.    150, 152, 153.

    **05 11651 NMG**

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES ☐   NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES ☐   NO ☒
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES ☐   NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES ☐   NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES ☒   NO ☐

    A.  If yes, in which division do all of the non-governmental parties reside?
        Eastern Division ☒   Central Division ☐   Western Division ☐

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
        Eastern Division ☐   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES ☐   NO ☒

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Anthony D. Rizzotti
                 Ropes & Gray LLP
ADDRESS          One International Place, Boston, MA  02110
TELEPHONE NO.    (617) 951-7954

(CategoryForm.wpd - 5/2/05)