

Suffolk Superior civil # 05-2795

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDUARDO GARZA MORA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>THE GILLETTE COMPANY,<br><br>　　　　　Defendant. | Civil Action No.: 05 11651 NMG |



### NOTICE OF REMOVAL

Defendant The Gillette Company ("Gillette") files this Notice of Removal and hereby removes the above-captioned action to the United States District Court for the District of Massachusetts. As grounds for the removal of this action, Gillette states:

1.　On or about July 7, 2005, Eduardo Garza Mora commenced this action against Gillette by filing a complaint in the Massachusetts Superior Court entitled <u>Mora</u> v. <u>The Gillette Company</u>, Suffolk Superior Court, Civil Action No. 05-2795A (the "Complaint"), a copy of which is attached.

2.　The Complaint and Summons were served on the Defendant by hand on or about July 12, 2005.

3.　This Notice of Removal is filed within 30 days after receipt by Defendant of a copy of the Summons and Complaint, and is timely pursuant to 28 U.S.C. § 1446(b).

4.　In his Complaint, Plaintiff alleges that Defendant discriminated against him on the basis of national origin in violation of federal law under 42 U.S.C. § 2000e and 42 U.S.C. § 1981.

9783604_1

~~5.    This Court would have had original jurisdiction over these claims pursuant to 28~~ U.S.C. § 1331. Accordingly, the action is removable to this Court under 28 U.S.C. § 1441(b).

      6.      A copy of all the process, pleadings and orders served upon the Defendant in this action is attached hereto and filed herewith.

                                            Respectfully submitted,

                                            THE GILLETTE COMPANY

                                            By its attorneys,

                                            _____
                                            Anthony D. Rizzotti (BBO# 561967)
                                            Christine A. Phipps (BBO# 658942)
                                            Ropes & Gray LLP
                                            One International Place
                                            Boston, MA 02110-2624
                                            (617) 951-7000

Date: August 9, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand

Date: 8/9/05    _Christie Phipps_

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                SUPERIOR COURT DEPARTMENT
                                                  OF THE TRIAL COURT

|  |  |
|---|---|
| EDUARDO GARZA MORA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | Civil Action No. 05-2795A |
| ) | |
| THE GILLETTE COMPANY, ) | |
| ) | |
| Defendant.   ) | |
| ) | |

### NOTICE TO STATE COURT OF REMOVAL TO FEDERAL COURT

**PLEASE TAKE NOTICE** that a Notice of Removal of this action from the Superior Court Department of the Trial Court, Civil Division, Commonwealth of Massachusetts, to the United States District Court for the District of Massachusetts (a copy of which is attached hereto) was filed on August 5, 2005, pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446.

Respectfully submitted,

THE GILLETTE COMPANY

By its attorneys,

_____
Anthony D. Rizzotti (BBO# 561967)
Christine A. Phipps (BBO# 658942)
Ropes & Gray LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Date: August 9, 2005

### CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand

Date: 8/9/05    Christine Phipps

9783587_1

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

### SUCV2005-02795
### Mora v Gillette Co

| | | | | | | |
|---|---|---|---|---|---|---|
| File Date | 07/07/2005 | Status | Disposed: transfered to other court (dtrans) | | | |
| Status Date | 08/10/2005 | Session | A - Civil A, 3 Pemberton Square, Boston | | | |
| Origin | 1 | Case Type | B22 - Employment Discrimination | | | |
| Lead Case | | Track | F | | | |

| | | | | | |
|---|---|---|---|---|---|
| Service | 10/05/2005 | Answer | 12/04/2005 | Rule12/19/20 | 12/04/2005 |
| Rule 15 | 12/04/2005 | Discovery | 05/03/2006 | Rule 56 | 06/02/2006 |
| Final PTC | 07/02/2006 | Disposition | 08/31/2006 | Jury Trial | Yes |

### PARTIES

**Plaintiff**
Eduardo Garza Mora
Active 07/07/2005

**Private Counsel 567674**
Neil Osborne
41 West Street
7th Floor
Boston, MA 02111-1216
Phone: 617-482-1160
Fax: 617-482-1166
Active 07/07/2005 Notify

**Defendant**
Gillette Co
Served: 07/12/2005
Served (answr pending) 07/26/2005

**Private Counsel 561967**
Anthony D Rizzotti
Ropes & Gray
1 International Place
Boston, MA 02110-2624
Phone: 617-951-7000
Fax: 617-951-7050
Active 08/02/2005 Notify

**Private Counsel 658942**
Christine A Flood
Testa Hurwitz & Thibeault
125 High Street
High Street Tower
Boston, MA 02110
Phone: 617-248-7000
Fax: 617-248-7100
Active 08/02/2005 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 07/07/2005 | 1.0 | Complaint & Jury demand |
| 07/07/2005 | | Origin 1, Type B22, Track F. |
| 07/07/2005 | 2.0 | Civil action cover sheet filed |
| 07/26/2005 | 3.0 | SERVICE RETURNED: Gillette Co(Defendant) in hand |
| 08/01/2005 | 4.0 | Assented to motion of deft to extend time to file a responsive pleading to & incl Aug l5, 2005 (w/o opposition) |
| 08/05/2005 | | MOTION (P#4) ALLOWED (Mitchell J. Sikora, Justice) Notices mailed August 09, 2005 |
| 08/09/2005 | | Certified copy of petition for removal to U. S. Dist. Court of Deft. |

MASXP-20050325
guen

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

08/10/2005
09:27 AM

## SUCV2005-02795
### Mora v Gillette Co

| Date | Paper | Text |
|---|---|---|
| | | The Gillette Company U. S. Dist.#(05-11651NMG). |
| 08/10/2005 | | Case REMOVED this date to US District Court of Massachusetts |

**EVENTS**

I HEREBY ATTEST AND CERTIFY ON
AUGUST 10, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.

COMMONWEALTH OF MASSACHUSETTS

**Suffolk, ss.**                                              **Superior Court**
                                                              **Civil Action No.:**

                                                              05-2795-A

|                                         |   |                         |
|-----------------------------------------|---|-------------------------|
| EDUARDO GARZA MORA                      | ) |                         |
|     Plaintiff,                          | ) |                         |
|                                         | ) | **PLAINTIFF'S COMPLAINT**   |
| vs.                                     | ) | **AND JURY DEMAND**         |
|                                         | ) |                         |
| THE GILLETTE COMPANY                    | ) |                         |
|     Defendant                           | ) |                         |

## I. - INTRODUCTION

1. The Plaintiff, Eduardo Garza Mora ("Plaintiff"), an employee of The Gillette Company ("Defendant"), has filed this Civil Action Complaint against the Defendant for employment discrimination based on national origin.

## II. - JURISDICTION

2. This Honorable Court has jurisdiction over all counts in this matter pursuant to M.G.L. c. 212 § 4, M.G.L. c. 231, et seq.

## III. - PARTIES

3. The Plaintiff, Eduardo Garza Mora, currently resides at 3 Frost Circle, Wellesley, Massachusetts 02482, and is therefore subject to the jurisdiction of this Court.

4. The Defendant, the Gillette Company, is a corporation with its principal place of business located at the Prudential Tower Building, Boston, Massachusetts 02199, and is therefore subject to the jurisdiction of this court.

## IV. - FACTS

1. Plaintiff Eduardo Garza Mora is a Mexican male.

2. The Plaintiff is fluent in the English, French, and Spanish languages.

3. In 1981, the Plaintiff, as class Valedictorian, earned his Bachelor's degree with honorific mention from the *Universidad del Valle de Atemajac* in Guadalajara, Mexico.

4. In 1983, the Plaintiff earned a Diploma in Business Policy from *Le Centre d'Etudes Superieures des Affaires* in Jouy-en-Josas, France.

5. In 1984, Plaintiff earned a Diploma in Strategy and Business Policy from *Le Centre d'Etudes Superieures des Affaires/ L'Ecole des Hautes Etudes Commerciales* in Jouy-en-Josas, France.

6. In 1990, the Plaintiff completed his Master of Advanced Management studies at the *Colegio de Graduados en Alta Direccion* in Mexico City, Mexico.

7. In November 1987, the Defendant hired the Plaintiff as a Business Planning Manager in its Mexico location.

8. Shortly after the Plaintiff began employment with the Defendant, Claudio Ruben, a Company Director informed the Plaintiff that he was the "wrong nationality" to advance in the company because he was not of Argentinean, Colombian, or Brazilian ancestry, but of Mexican ancestry.

9. On another occasion, Claudio Ruben informed the Plaintiff that although the Plaintiff was best prepared to become Controller of Gillette Mexico, there was pressure on him to give an Argentinean candidate the position.

10. Mr. Ruben subsequently offered the Controller position to the non-Mexican candidate.

11. Based on previous conversations he had with the Company Director, the Plaintiff reasonably believed that he was not offered the position of Controller because he was of Mexican ancestry, as opposed to Argentinean, Colombian, or Brazilian ancestry.

12. The Plaintiff complained about this treatment in a meeting with Frank O'Connell, the Vice President of Human Resources for Gillette Latin America.

13. In this meeting, Mr. O'Connell emphasized how a candidate's nationality is considered during the selection process and that a person with a Mexican passport was given negative consideration.

14. On a different occasion, Jorge Micozzi, the President of Gillette for the Defendant's Latin American offices asked the Plaintiff "Are all Mexicans incompetent or is it just that Gillette can't find good ones?"

2

15. Based on the comments of Frank O'Connell and Jorge Micozzi, and the comments Claudio Ruben, the Plaintiff reasonably believed that some of the Defendant's employees held negative stereotypes about Mexicans.

16. Mexico is one of the Defendant's largest markets.

17. The positions of Group President, Group Marketing Director, and Group Finance Director are key positions at the Gillette Latin American Group, yet a Mexican has not occupied any of these positions for many years.

18. In January 1991, the Plaintiff earned a transfer with the Defendant to the position of Senior Financial Analyst.

19. On or about January 20, 1993, consistent with past performance, the Plaintiff received an exceptional performance evaluation praising his initiative, focus on customer needs, people skills, and awareness for improving performance.

20. In February 1993, the Plaintiff earned a promotion with the Defendant to the position of Financial Planning Manager.

21. In December 1993, the Plaintiff earned a promotion with the Defendant to the position of Controller (Director of Finance).

22. On or about January 5, 1994, again consistent with past performance, the Plaintiff received an exceptional performance evaluation praising his intelligence, dedication to his job, sense of responsibility, and business sense.

23. Between the years of 1993-2002, the Plaintiff held three different positions as Controller/Director of Finance for Defendant, working in various geographical locations such as Colombia, Turkey, and Mexico.

24. On or about March 15, 2002, the Plaintiff received a positive performance evaluation praising his strategic leadership, drive for results, alignment of performance for success, and success in building a successful team.

25. On or about March 15, 2002, the Plaintiff expressed an interest to become financially responsible for one of the Defendant's larger groups or regions, including the position of Vice President of Finance for Gillette Latin America.

26. The Plaintiff's credentials and experience were similar to those of previous employees promoted to the position of Vice President of Finance for Gillette Latin America.

27. Despite the Plaintiff's credentials, Thomas Madsen, an outside American candidate, was appointed Vice President of Finance for Gillette Latin America.

3

28. In April 2002, based on his experience and education, the Plaintiff was chosen to direct the Defendant's Project Renaissance.

29. To the best of his knowledge, the Plaintiff was the only member of the Renaissance Project who did not receive a growth promotion with his appointment to the project.

30. During his tenure as Director of Project Renaissance, the Plaintiff was present on several occasions when other employees made discriminatory comments about people of Latin origin.

31. The Defendant's senior management was aware of Mr. Piscatelli's harassing comments and behavior and discussed removing him from the project; however, Joe Schena intervened to prevent Mr. Piscatelli's removal from the project.

32. The Plaintiff requested that senior management send a written warning letter to Mr. Piscatelli, but senior management refused the Plaintiff's request.

33. Even before working with the Plaintiff, Gary Piscatelli told Claudio Ruben that the plaintiff was unworthy to be his boss.

34. Joseph Schena informed Plaintiff that Mr. Piscatelli had a problem working on the project because he "is having to deal with two Latinos" [the Plaintiff and the Plaintiff's supervisor].

35. On or about May 1, 2003, Gary Piscatelli's dislike for persons of Latin descent was evidence during a meeting in which he slammed his open hand on the table.

36. During a business lunch with the Plaintiff and Mr. Ruben, Rick Lees, another member of the Financial Leadership team made derogatory comments, about immigrants, specifically Latinos, arriving in America.

37. After this lunch, the Plaintiff informed Mr. Ruben that the employee's comments offended him; Mr. Ruben commented that the Plaintiff was being too sensitive.

38. In 2003, during his tenure as Director of Project Renaissance, the Plaintiff expected to be identified as a future company leader due to his work on the Renaissance Project and his successful completion of past projects.

39. On or about July 10, 2003, James M. Kilts, the Defendant's Chairman and Chief Executive Officer, issued a letter regarding Project Renaissance's achievements, acknowledging certain elements in which the Plaintiff played a key role.

40. The Defendant has a process, executed by the Financial Leadership Team, for identifying and developing financial talent in its company.

4

41. Employees that meet the requirements of the Financial Leadership Team are identified as Next Generation Leaders, or N.G.L.s.

42. When evaluating a potential N.G.L., the Financial Leadership Team particularly considers a candidate's employment performance, talent development, and leadership competencies.

43. When determining leadership competencies, the Financial Leadership Team considers skills such as building a successful team, drive for results, and strategic leadership.

44. When evaluating a potential N.G.L.'s employment performance, the Financial Leadership Team considers the candidates previous performance evaluations.

45. For several years, the Plaintiff's performance evaluations have been extremely positive, and his supervisors have consistently rated his competencies above the company average.

46. When evaluating a candidate's talent development skills, the Financial Leadership Team considers how a candidate influences the careers of other employees.

47. During his seventeen years of employment with Defendant, the Plaintiff has significantly influenced the careers of numerous employees in the areas of career advancement, coaching, and hiring.

48. In 2003, the Plaintiff attended a meeting where he was informed that he had not been chosen to be an N.G.L.

49. In that meeting, the Plaintiff's supervisor informed Plaintiff that he would need to improve his accent for consideration for an N.G.L. position.

50. In a subsequent evaluation, the Plaintiff's supervisors stated that "to gain high impact," he needed to develop his communication skills by improving his "accent and fluency" and that the company would assist him via "formal feedback from his manager."

51. Based on his supervisor's comments and his evaluations, and the fact that he met all stated N.G.L. requirements but was not chosen to be an N.G.L., Plaintiff reasonably believes that he was not chosen to be an N.G.L. because of his national origin.

52. The Plaintiff complained to his supervisor that the feedback received from the Financial Leadership Team had not been based on factors such as performance, influence, or leadership, but instead were based on factors such as the Plaintiff's Mexican accent.

53. A consultant, hired by the Defendant, who was working with the Plaintiff's supervisor, informed the Plaintiff that his executive presence and public persona were influenced by his Latin American culture and that Plaintiff's culture was different than American culture.

54. Based on his conversations with his supervisor and the Defendant's hired consultant, the Plaintiff reasonably believed that he was not chosen to be an N.G.L. because of his adherence to his Mexican culture.

55. The Plaintiff informed Human Resources of his disturbing conversations with the consultant.

56. On or about February 5, 2004, the Plaintiff received a positive performance evaluation praising his strengths in building a successful team, strategic leadership, drive for results, and customer focus.

57. On or about February 9, 2004, the Plaintiff met with Kalpana Shunmugham, one of Defendant's Human Resource Consultants and expressed concern over the discriminatory treatment, based on national origin, that he was experiencing.

58. During this meeting, the Plaintiff articulated several examples of discriminatory treatment by several of the Defendant's employees, including discriminatory treatment by supervisors.

59. On or about February 26, 2004, the Plaintiff met with Asad Husain, one of Defendant's Directors of Human Resources to discuss the discriminatory treatment that the Plaintiff was experiencing.

60. During this meeting, the Plaintiff articulated several examples of discriminatory treatment by several of the Defendant's employees, including discriminatory treatment by supervisors.

61. Mr. Husain responded to the Plaintiff during a meeting that the Plaintiff's complaints about workplace discrimination could be read as "cowardly."

62. On or about March 5, 2004, the Plaintiff submitted his resume and a list of achievements for consideration for the position of Oral-B's Vice President of Finance.

63. The Plaintiff had first-hand experience working with Oral-B, including but not limited to: the financial set-up of Oral-B manufacturing operations, temporary responsibility for a team managing Oral-B sales in Colombia, and management of Oral-B's P&L.

64. The Plaintiff had also executed a very impressive collection program for Oral-B.

65. The Plaintiff was well qualified for the position because while employed by Gillette Colombia, Plaintiff was approached by Mario Mariasch to become Finance Director for Oral-B Latin America and AMEE, but the offer never materialized due to other company priorities.

66. On or about May 15, 2004, a less qualified non-Mexican candidate was hired for the position of Oral-B's Vice President of Finance.

67. On or about July 13, 2004, Plaintiff had a meeting with a member of senior management regarding his assignment and career aspirations.

68. During this meeting, the Plaintiff expressed his expectations that he would receive a promotion to either the position of Vice President of Finance for Latin America or to the position of Vice President of Finance.

69. Plaintiff's expectation that he would receive a promotion was reasonably based on his excellent work history with Defendant and the fact that five people had previously been directly promoted to similar positions from jobs previously held by the Plaintiff.

70. During this meeting, the senior manager informed the Plaintiff that his chance of a promotion to the position of Vice President of Finance was extremely unlikely.

71. Based on the facts of his previous experiences with discrimination in the Defendant's company, and the fact that he was unlikely to be promoted despite his qualifications, the Plaintiff reasonably believed that he was being discriminated against based on his national origin.

72. Plaintiff and his supervisor, the only high-level Latinos working on the Renaissance Project, were later removed from the Renaissance Project.

73. After his removal from Project Renaissance, the Plaintiff was transferred to a temporary position with the Defendant's Shared Services Center; the position involved no supervisory responsibility.

74. The Plaintiff's removal from the Renaissance Project occurred after his meeting with Human Resources regarding the disparate treatment that he had experienced during his employment with the Defendant.

75. On or about July 15, 2004, the Plaintiff filed a formal discrimination complaint with the Defendant's Workforce Diversity with Dawn Frazier-Bohnert.

76. On or about August 6, 2004, Ms. Frazier-Bohnert informed the Plaintiff that Mike Estrada, another Human Resources Officer was to launch an investigation into the Plaintiff's discrimination complaints.

7

77. On or about August 30, 2004, the Plaintiff handed over a letter to the Defendant's Chairman and Chief Executive Officer about the discrimination he had experienced.

78. On or about December 9, 2004, the Plaintiff filed a complaint against the Defendant with the Massachusetts Commission Against Discrimination, alleging that the Defendant discriminated him based on the basis of his national origin.

79. On or about March 18, 2005, the Plaintiff withdrew his complaint with the Massachusetts Commission Against Discrimination to file this civil action.

80. As a result of the Defendant's conduct, the Plaintiff has suffered damages, including, but not limited, to including lost wages, lost benefits, lost bonuses, and mental and emotional distress.

## V. - CAUSES OF ACTION

### COUNT ONE
### Violation of M.G.L. Chapter 151B

81. Paragraphs 1-80 are hereby incorporated by reference as if set forth directly herein.

82. The above-stated actions and omissions of Defendant constitute direct violations of M.G.L. Chapter 151B § 4.

83. As a direct and proximate result of its above-stated acts and omissions, Defendant deprived Plaintiff of economic and non-economic benefits, including but not limited to: lost wages and employment benefits, and has caused the Plaintiff pain and suffering, mental anguish, humiliation, and embarrassment.

84. Defendant's conduct was willful, wanton, and designed to deprive Plaintiff of his rights under M.G.L. Chapter 151B.

### COUNT TWO
### Violation of Title VII, 42 U.S.C. § 2000e

85. Paragraphs 1-84 are hereby incorporated by reference as if set forth directly herein.

86. The above-stated discriminatory acts by Defendant, its agents, and employees violate Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e.

87. As a direct and proximate result of its above-stated acts and omissions, the Defendant deprived the Plaintiff of economic and non-economic benefits,

including but not limited to lost wages, and suffered pain and suffering, mental anguish, humiliation, and embarrassment.

88. The Defendant's conduct was willful, wanton, and designed to deprive the Plaintiff of his rights under Title VIII, 42 U.S.C. § 2000e.

## COUNT THREE
### Violation of 42 U.S.C. § 1981

89. Paragraphs 1-88 are hereby incorporated by reference as if set forth directly herein.

90. The above-stated discriminatory acts by the Defendant, its agents, and employees violate Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

91. As a direct and proximate result of its above-stated acts and omissions, the Defendant has deprived the Plaintiff of economic and non-economic benefits, including but not limited to lost wages, and suffered pain and suffering, mental anguish, humiliation, and embarrassment.

92. The Defendant's conduct was willful, wanton, and designed to deprive the Plaintiff of his rights under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## COUNT FOUR
### Intentional Infliction of Emotional Distress

93. Paragraphs 1-92 are hereby incorporated by reference as if set forth directly herein.

94. Defendant, acting through its agents and employees, engaged in the acts previously described deliberately and intentionally in order to cause Plaintiff severe emotional distress; alternatively, plaintiff alleges that such conduct was done in reckless disregard of the probability of such conduct causing him sever emotional distress.

95. The foregoing conduct did in fact cause Plaintiff to suffer extreme and severe emotional distress. As a proximate cause of such conduct, the Plaintiff suffered embarrassment, anxiety, humiliation and emotional distress, and will continue to suffer emotional distress in an amount in excess of the minimum jurisdiction of this honorable Court, the precise amount of which will be proven at the time of trial.

96. The Defendant committed the acts maliciously, fraudulently, and oppressively, with the wrongful intention of injuring the Plaintiff, and acted with an improper and evil motive amounting to malice in conscious disregard of the Plaintiff's

9

rights. Because the actions taken toward the Plaintiff were carried out by the Defendant's employees, including managerial employees, acting in a despicable, cold, callous, and intentional manner designed to injure and damage the Plaintiff, he is entitled to recover punitive damages from the Defendant, in an amount according to proof.

### COUNT FIVE
### Tortious Interference with Employment Relationship

97. Paragraphs 1-96 are hereby incorporated by reference as if set forth directly herein.

98. The Defendant, through its employees, officers, and agents, acted with actual malice in conspiring to discharge the Plaintiff form his position of Director of Project Renaissance.

99. As a direct and proximate result of the above-stated acts and omissions of the Defendant, the Plaintiff has been deprived of economic and non-economic benefits including but not limited to: lost wages, lost benefits, bonuses, and vacation benefits; moreover, the Plaintiff has suffered mental and emotional distress.

WHEREFORE, Plaintiff requests that this honorable Court enter judgment against the Defendant as follows:

1. Enter a declaratory judgment that the acts and practices complained of herein are in violation of the laws of the United States and the Commonwealth of Massachusetts, and constitute intentional or negligent infliction of emotional distress upon the plaintiff.

2. Permanently enjoin Defendants, their agents, successors, employees, and those acting in concert with them, from engaging in each of the unlawful practices, policies, usages, and customs set forth above.

3. Direct Defendant to make Plaintiff whole for all earnings he would have received but for Defendant's discriminatory and tortious treatment including, but not limited to:

4. Direct Defendant to offer to the Plaintiff the next available position of Vice President of Finance.

5. Award the Plaintiff compensatory damages, including lost wages, lost benefits, bonuses, vacation benefits, mental and emotional distress and other special and general damages according to proof.

6. Award punitive damages for those counts that allow for such a remedy.

10

7. Award interest, including pre-judgment interest, at the current legal rate.

8. Award the Plaintiff the suit costs incurred on all causes of action.

9. Award the Plaintiff the costs of this action, together with reasonable attorney's fees, as provided by M.G.L. Chapter 151B.

10. Award the Plaintiff any other relief that this honorable Court deems just, proper, and necessary.

11. Award full and fair monetary damages in an amount to be proven at trial to compensate Plaintiff for the mental anguish, humiliation, pain and suffering, and such other damages as resulted from the improper conduct of the defendants.

## JURY DEMAND

The Plaintiff demands a jury to hear and decide all issues of fact.

Respectfully Submitted,
Plaintiff, by His Attorney

Neil Osborne (BBO #567674)
41 West Street, 7th Floor
Boston, MA 02111-1216
Phone (617) 482-1160
Fax (617) 482-1166

Dated: July 7, 2005

I HEREBY ATTEST AND CERTIFY ON
AUGUST 10, 2005 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: ASSISTANT CLERK

11

| CIVIL ACTION COVER SHEET | DOCKET NO(s) 05-2795-A | Trial Court of Massachusetts Superior Court Department County: _____ |
|---|---|---|

**PLAINTIFF(S)**: Eduardo Garza mora

**DEFENDANT(S)**: The Gillette Company

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**: neil osborne, Law Offices of neil osborne, 41 West St. 7th Fl Boston MA 02111
Board of Bar Overseers number: 567674 (617)482-1160

**ATTORNEY (if known)**:

### Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B22 | employ. discr. | (F) | (X) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses .................................................. $ ..........
2. Total Doctor expenses .................................................... $ ..........
3. Total chiropractic expenses .............................................. $ ..........
4. Total physical therapy expenses ......................................... $ ..........
5. Total other expenses (describe) ......................................... $ ..........
   Subtotal $ ..........
B. Documented lost wages and compensation to date ....................... $ 50,000
C. Documented property damages to date .................................. $ ..........
D. Reasonably anticipated future medical and hospital expenses .......... $ ..........
E. Reasonably anticipated lost wages ..................................... $ ..........
F. Other documented items of damages (describe) ......................... $ 150,000
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

TOTAL $ 200,000

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL $. ..........

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____  DATE: 7/7/2005

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

I HEREBY ATTEST AND CERTIFY ON AUGUST 10, 2005 THAT THE FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.

3

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 05-2795A

Eduardo Garza Mora , Plaintiff(s)

v.

The Gillette Company , Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon Law Offices of Neil Osborne, P.C. plaintiff's attorney, whose address is 41 West Street 7th Fl Boston MA, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the 7th day of July, in the year of our Lord two thousand 05.

A true copy Attest:
7-12-05 Deputy Sheriff Suffolk County

Michael Joseph Donovan
Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT (2) MOTOR VEHICLE TORT (3) CONTRACT (4) EQUITABLE RELIEF (5) OTHER

FORM CIV.P. 1 3rd Rev.

I HEREBY ATTEST AND CERTIFY ON
AUGUST 10, 2005 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:
ASSISTANT CLERK

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                                 SUPERIOR COURT

EDUARDO GARZA MORA,      )
                         )
            Plaintiff,   )
                         )
    vs.                  )
                         )   Civil Action No.  05-2795A
THE GILLETTE COMPANY,    )
                         )
            Defendant.   )
                         )

Notice sent
8/09/2005
N. O.A
A. D. R.
C. A. P.
R. & G.

**DEFENDANT'S ASSENTED-TO MOTION
TO EXTEND TIME TO FILE A RESPONSIVE PLEADING**

Defendant The Gillette Company, with the assent of Plaintiff's counsel, hereby moves this Court to extend the time for Defendant to file its Answer or other responsive pleading to and including August 15, 2005.                                                                                     (sc)

Assented to:                                    THE GILLETTE COMPANY

                                                By its attorneys,

_____                       _____
Neil Osborne (BBO# 567674)                      Anthony D. Rizzotti (BBO# 561967)
41 West Street, 7th Floor                       Christine A. Phipps (BBO# 658942)
Boston, MA 02111-1216                           ROPES & GRAY LLP
(617) 482-1160                                  One International Place
                                                Boston, MA 02110-2624
                                                (617) 951-7000

Dated: July 28, 2005                            Dated: July 31, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand

Date: 8/1/05   Christine A Phipps

I HEREBY ATTEST AND CERTIFY ON
AUGUST 10, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
                        ASSISTANT CLERK