UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDUARDO GARZA MORA,<br><br>           Plaintiff,<br><br>    v.<br><br>THE GILLETTE COMPANY,<br><br>           Defendant. | Civil Action No. 05-11651RCL |

## DEFENDANT'S MOTION FOR LEAVE TO FILE REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant The Gillette Company hereby moves for leave to file a reply memorandum in further support of its motion for summary judgment. In support of its motion, Defendant states that this reply memorandum is necessary for the following three reasons.

First, a reply memorandum is necessary to address the recent First Circuit case of Velez v. Janssen Ortho, LLC, – F. 3d –, 2006 WL 3114229 (1st Cir. Nov. 3, 2006), which is highly relevant to the issues raised in Defendant's motion for summary judgment and which was released after Defendant filed its principal memorandum of law in support of its motion.[1]

Second, a reply is necessary to address arguments raised by Plaintiff in his opposition papers that could not have been anticipated by Defendant. For example, Plaintiff argues that contrary to firmly established First Circuit precedent, he can establish a prima facie case of

---

[1] Defendant originally sought leave to file a 35- page memorandum of law in support of its motion for summary judgment. The Court granted Defendant leave to file a 30-page memorandum. Defendant subsequently filed a memorandum of law which, not including the certificate of service, was only 19 pages.

discrimination based on an alleged failure to promote without showing that he applied for an

open position. Plaintiff's Opposition at 6-7. In support of this remarkable proposition, Plaintiff

relies on authority from the Sixth Circuit that is distinguishable from the facts in the present case.

Third, a reply memorandum is necessary to correct facts which Plaintiff has

misrepresented in his opposition papers. For example, Plaintiff incorrectly asserts that (1) he

was "never considered" by the Financial Leadership Team for a Next Generation Leader

("NGL") designation because his immediate supervisor, Claudio Ruben, did not recommend him,

and (2) without such NGL designation "a qualified candidate would not be part of the pool of

eligible candidates for promotions to a senior management position." <u>See</u> Opposition at p.3. As

explained in more detail in the attached proposed reply, neither alleged fact is true and both are

contradicted by the undisputed facts or not supported in the record.

For the foregoing reasons, Defendant respectfully requests leave to file the attached reply

memorandum in further support of its motion for summary judgment.

Respectfully submitted,


THE GILLETTE COMPANY

By its attorneys,

/s/ Anthony D. Rizzotti
Anthony D. Rizzotti (BBO# 561967)
Christine A. Phipps (BBO# 658942)
David C. Potter (BBO#644610)
Ropes & Gray LLP
One International Place
Boston, MA  02110-2624
(617) 951-7000

Date:   December 4, 2006

## DEFENDANT'S CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

I, David C. Potter, counsel for the Defendants certify that, in accordance with Local Rule 7.1(A)(2), I have conferred with Neil Osborne in good faith to resolve or narrow the issues raised in the Defendant's Motion.

Date:  December 4, 2006                    /s/ David C. Potter
                                           David C. Potter


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants (if any) on December 4, 2006.


Date:  December 4, 2006                    /s/  David C. Potter
                                           David C. Potter

UNITED STATED DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDUARDO GARZA MORA, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 05-11651-RCL |
| ) | |
| v. ) | |
| ) | |
| THE GILLETTE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S REPLY MEMORANDUM OF LAW

### I.    PLAINTIFF'S CLAIMS ARE LIMITED TO THOSE ADDRESSED BY HIM IN HIS OPPOSITION.

In his Opposition the Plaintiff identified the claims of unlawful discrimination that he is pursuing.  Under the "raise or waive" rule, Plaintiff has waived all claims other than those addressed in his Opposition.  See Rocafort v. IBM Corp., 334 F.3d 115, 121-22 (1st Cir. 2003) (noting that a party "has a duty to incorporate all relevant arguments in the papers that directly address a pending motion" and that under the "well-established 'raise-or-waive' rule," a litigant waives all claims not adequately addressed as part of his summary judgment argument); see also Grenier v. Cyanimid Plastics, Inc., 70 F.3d 667, 672 (1st Cir. 1995)  ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived.").  Thus, only the four claims which are identified and addressed in the Plaintiff's Opposition should be considered by the Court pursuant to the "raise or waive rule."

In his Opposition, the Plaintiff addresses only the following claims of alleged invidious discrimination:  (1) the failure of the Plaintiff to be promoted to unidentified positions allegedly because of his failure in 2003 to be designated as a Next Generation Leader ("NGL"); (2) the failure of the Plaintiff to receive a salary increase when he was selected to be Director of Project

Renaissance in April 2002;  (3) an allegedly unjustified requirement imposed in 2003 that the

Plaintiff correct his accent "so that people could understand him," <u>see</u> Opposition at 11; and (4)

the removal of the Plaintiff as Director of Project Renaissance in March 2004 by Gillette's Chief

Financial Officer, Mr. Charles Cramb.

   All other potential claims have been waived by the Plaintiff.  <u>See</u> <u>Iverson</u> v. <u>City of</u>

<u>Boston</u>, 452 F.3d 94, 103 (1st Cir. 2006) (". . . [T]he Plaintiffs made no mention of a barrier-

removal claim in their opposition to the [Defendant's] dispositive motion.  As we wrote in a

comparable case '[c]ourts are entitled to expect represented parties to incorporate all relevant

arguments in the papers that directly address a pending motion.'  . . .  This branch of the raise-or

waive rule serves the salutary purpose of preventing litigants from gaming the system by seeding

complaints with Delphic references in the hope of facilitating an escape should the district

court's ruling on their advertised claims fail to suit.").[1]

## II.    SOME OF PLAINTIFF'S CLAIMS ARE TIME-BARRED UNDER TITLE VII AND CHAPTER 151B.

   Some of the Plaintiff's claims are time-barred under both Title VII and Chapter 151B.

The time-barred claims are:  (1) the Plaintiff's failure to get a raise in pay in 2002 when

appointed to serve as Director of Project Renaissance, (2) the Plaintiff's failure in 2003 to be

designated as an NGL by the Financial Leadership Team, and (3) the Plaintiff's participation in

2003 in a development plan designed to improve the Plaintiff's communication skills.

   Under both Title VII and Chapter 151B a timely filing of an administrative charge is a

prerequisite to filing a civil action.  <u>See</u> <u>Silvestris</u> v. <u>Tantasqua Reg'l Sch. Dist.</u>, 446 Mass. 756,

766 (2006) ("The filing of a timely charge of discrimination with the MCAD is a prerequisite to

---

[1] A mere passing reference by the Plaintiff in his Opposition to possible claims without a developed argument will not avoid the waiver.  <u>See</u> <u>Rocafort</u> v. <u>IBM Corp.</u>, <u>supra</u>, 334 F.3d at 121 ("Passing reference to legal phrases and case citations without developed argument is not sufficient to defeat waiver.").

the filing of such an action in the Superior Court."); <u>Noviello</u> v. <u>City of Boston</u>,

398 F.3d 76, 85 (1st Cir. 2005).  To be timely the administrative charge must be filed within

300 days of the allegedly discriminatory act.  <u>See</u> Mass. Gen. L. c. 151B §5; 42 U.S.C.

§2000e-5 (e) (1).  The Plaintiff filed his administrative charge with the MCAD and the EEOC on

December 9, 2004.  (¶ 116).[2]  <u>See</u> Ex. 16 (Charge of Discrimination).  Under both Chapter 151B

and Title VII, the Plaintiff's filing is timely only as to those acts which occurred after February

21, 2004.  Therefore, none of the above claims are timely.  Thus, the only claims put forward by

Plaintiff that are not time-barred are (1) Defendant's removal of Plaintiff from his position as

Director of Project Renaissance in 2004 and (2) Defendant's alleged failure to promote Plaintiff

on or after February 21, 2004.

The suggestion by the Plaintiff in his Opposition, <u>see</u> pp. 17-19, that otherwise untimely

claims are saved by the "continuing violation" rule is incorrect.  For the continuing violation

theory to apply in Chapter 151B cases, a plaintiff needs to demonstrate that a timely allegedly

discriminatory act has a substantial relationship with the untimely allegedly discriminatory act.

<u>See</u> <u>Ocean Spray Cranberries, Inc</u>. v. <u>Massachusetts Comm'n Against Discrimination</u>, 441 Mass.

632, 643 (2004).  To establish a continuing violation of a serial nature requires "an interlinked

succession of related events, stemming from a common discriminatory animus . . . ." where one

of the allegedly discriminatory acts occurs within the limitation period.  <u>Id</u>. at 643 n.14 (citations

omitted).  The rule under Title VII, as it relates to discrete discriminatory acts, is that they are

simply time barred if untimely.  <u>See</u> <u>National R.R. Passenger Corp.</u> v. <u>Morgan</u>, 536 U.S. 101,

113 (2002) (". . . . [D]iscrete discriminatory acts are not actionable if time barred,  even when

they are related to acts alleged in timely filed charges.").

---

[2] Citations to "¶ ___" refer to Defendant's Statement of Material Facts of Record as to Which There Is No Genuine
Issue To Be Tried.  Citations to "Ex. ___" refer to the Appendix of Defendant's Exhibits to its Motion for Summary
Judgment.

The Plaintiff suggests that his demotion/removal from the position of Director of Project Renaissance in 2004 is the timely alleged discriminatory act that anchors his untimely claims. <u>See</u> Opposition at p. 17. However, this demotion/removal is a separate distinct act unrelated to any prior untimely claims. The Plaintiff places the blame for his otherwise time-barred claim relating to his failure to be designated as an NGL in 2003 on the alleged discriminatory animus of his supervisor, Mr. Ruben. <u>See</u> Opposition at p. 19 ("But for a discriminatory animus Ruben withheld his endorsement of the Plaintiff during the August 2003 talent review . . . ."). The Plaintiff's failure to be designated as an NGL in 2003 is a separate, discrete act from his subsequent demotion/removal by Mr. Cramb from the position of Director of Project Renaissance in 2004. Moreover, the alleged discriminatory animus of Mr. Ruben cannot in any way be linked with the Plaintiff's subsequent removal as Director, because it is undisputed that Mr. Ruben did not make the decision to remove the Plaintiff from his job as Director of Project Renaissance. <u>See</u> Ex. 5, (Cramb Affidavit) at ¶ 47. In fact, Mr. Cramb also removed Mr. Ruben from the Project. <u>Id.</u> In short, the Plaintiff points to no evidence – nor is there any – that establishes a substantial relationship between Mr. Cramb's decision to remove the Plaintiff as the Director in 2004 with any allegedly discriminatory prior action by Mr. Ruben. <u>Id.</u>

### III.    ANY CLAIMS OF DISCRIMINATION NOT INCLUDED IN THE CHARGE FILED WITH THE MCAD AND EEOC MUST BE DISMISSED.

Any claims under Title VII and Chapter 151B which were not included in the Plaintiff's administrative charge must be dismissed.

Under both Title VII and Chapter 151B the scope of a judicial complaint is limited to the claims raised in, or reasonably related to the claims set forth in, the administrative charge. <u>See</u> <u>Jorge</u> v. <u>Rumsfeld</u>, 404 F. 3d 556, 565 (1st Cir. 2005) ("A Title VII suit may extend as far as, but not beyond, the parameters of the underlying administrative charge."); <u>Nguyen</u> v. <u>University of</u>

Mass., 66 Mass. App. Ct. 276, 282 (2006) (dismissing an additional claim because it "was not encompassed by the allegations of the charges filed with the MCAD, or any investigation that would reasonably be expected to grow out of such charges."). The purpose of this rule is "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." Lattimore v. Polaroid Corp., 99 F. 3d 456, 464 (1st Cir. 1996). ("Lattimore"). As a result, "in employment discrimination cases, '[t]he scope of the civil complaint is . . . . limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge.'" Lattimore, 99 F.3d at 464. Thus, a complainant may not "file general charges with the [administrative agency] . . . and then expect that this allegation will permit all claims of race-based discrimination in a subsequent law suit . . . Nor does it entitle the complainant to make a specific claim based on one set of facts and, later, assert an entirely different claim based on a different and unrelated set of facts." Id. (citations omitted).

The Plaintiff's administrative charge of discrimination sets forth only a general conclusory assertion of discrimination based on national origin with respect to unidentified alleged promotional opportunities. See Ex. 16. The charge fails to present any specific facts or specific dates relating to alleged denials of promotions, as required by 29 C.F.R. § 1601.12 (a) (3) and 84 CMR § 1.10(5). Id. The Plaintiff's administrative charge is thus clearly confined to a conclusory assertion of denials of promotions based on his national origin.

As a result, the Plaintiff's assertion of claims that he was demoted, failed to get a salary increase, and was required to improve his communication skills because of his national origin are clearly not in any way encompassed by his allegations relating to promotions or by any investigation that would reasonably be expected to grow out of a failure to promote charge. They are based upon entirely different facts. As a result, they are not encompassed within the

administrative charge and must be dismissed.  See Lattimore, supra, 99 F.3d at 465 (dismissing claims as beyond the scope of the administrative charge because the "claims are based on different facts that are separate and distinct both qualitatively and temporally.").

## IV.   PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE WITH RESPECT TO ANY PROMOTIONS.

The Plaintiff in his Complaint refers only to one specific possible promotion that he claims he was denied because of his national origin.  This is the position of Vice President, Finance, Oral Care for which he applied on March 7, 2004 (the "Oral Care Position").  See Ex. 9.  With respect to the rest of his promotional claims, the Plaintiff has failed to identify any actual available position for which he was qualified.  The Plaintiff's promotion claims fail because he has failed to establish *prima facie* cases of invidious discrimination.

### A.   The Plaintiff's Contention that He Need Not Demonstrate that He Applied For Any Promotional Opportunity is Incorrect.

Relying on an unreported case from the Sixth Circuit Court of Appeals, see Hill v. Forum Health, 167 Fed. Appx. 448 (6th Cir. 2003), the Plaintiff contends that, if an employer does not post a position, then a plaintiff's *prima facie* case is softened such that plaintiff need not show that he applied for the position and, instead, the employer has an obligation to consider each employee who might reasonably be interested in the promotion.  See Opposition at 6-7.  On the facts of this case, this proposition is inapplicable.  In addition, this rule does not relieve the Plaintiff from establishing the other required elements of a *prima facie* case.

As an initial matter, Plaintiff's reliance on this case is misplaced since its holding is applicable only when a plaintiff does not know of the open positions at issue or the employer lacks a formal mechanism for expressing interest in such positions.  Rodriguez v. FedEx Freight East, Inc., 2006 WL 1522584, at *7 (E.D. Mich. May 30, 2006); Dews v. A.B Dick Co., 231 F.3d 1016, 1022 (6th Cir. 2000).  Neither is the case here.  Indeed, with respect to the Oral Care

position, Plaintiff acknowledges that he knew about the position and that he expressed his interest in the position by submitting his resume to his supervisor.  <u>See</u> Ex. 1, Plaintiff's Dep. I at 93-95; Ex. 9.  As a result, the Sixth Circuit exception is not applicable.  <u>See</u> <u>Donahoo</u> v. <u>Ohio Dept. of Youth Servs.</u>, 237 F. Supp. 2d 844, 864-866 (N.D. Ohio 2002) (The Sixth Circuit exception was inapplicable because the plaintiff knew about the vacancy.).

Secondly, even under Sixth Circuit precedent, the Plaintiff still must establish the other two elements of a *prima facie* case, *i.e.*, he must identify an available position for which he was qualified and show that someone with qualifications similar to his was hired for the position. <u>Hill</u>, v. <u>Forum Health</u> 167 Fed. Appx. at 452-453; <u>see</u> <u>also</u> <u>Dews</u> v. <u>A.B Dick Co.</u>, <u>supra</u> 231 F.3d  at 1022 (recognizing same); <u>Donahoo</u> v. <u>Ohio Dept. of Youth Servs.</u>, <u>supra</u> 237 F. Supp. 2d at 866-867.  As explained below, Plaintiff cannot make this showing.

**B.      Plaintiff Did Not Establish the Elements of a *Prima Facie* Case with Respect to Promotion to the Oral Care Position.**

In addition to the Plaintiff's failure to establish that he applied for a vacant position, his *prima facie* case with respect to his application for a promotion to the Oral Care Position fails because he also has not, and cannot, establish the rest of the second element, *i.e.* he was qualified for the vacant position, the third element, *i.e.* he was rejected, or the fourth element, *i.e.* that the employer sought to fill the position with persons with qualifications similar to his.  <u>See</u> <u>Cooper</u> v. <u>Federal Reserve Bank of Richmond</u>, 467 U.S. 867, 875(1984) (setting forth the four elements necessary to establish a *prima facie* case for failure to promote claims).  First, plaintiff does not dispute that, at the time he applied, the position was no longer vacant because a decision had been made to hire Glenn Brack into the position.  <u>See</u> ¶ 59 of Undisputed Facts and Plaintiff's Rule 56.1 Statement of Disputed Facts.

Secondly, however, the Plaintiff has made no evidentiary showing that he was qualified for the Oral Care Position. The Plaintiff has admitted that he does not have any knowledge of what the qualifications were for the position. See Ex. 9 ("I am not aware of what kind of general qualifications has been requested for these kinds of positions. Or what specific conditions exist today for this specific job."). Thirdly, since Gillette had already selected someone for the position, the Plaintiff cannot establish that he was rejected for the position. Finally, the Plaintiff also presented no evidence to establish the fourth element of a *prima facie* case, *i.e.* that the employer sought persons with qualifications similar to his. In fact, at his deposition, the Plaintiff admitted that he had no knowledge as to the qualifications of the successful applicant and no specific information as to how his qualifications compared to his. See Ex. 1, Plaintiff's Dep. at 102.

Thus, the Plaintiff has failed to establish three of the four elements of a *prima facie* case of discrimination with respect to the Oral Care Position.

      **C.**    **The Plaintiff Has Failed to Establish a *Prima Facie* Case of Discrimination With Respect to Any Unidentified Promotional Opportunity.**

The Plaintiff has failed to identify any other specific positions into which he claims he was not promoted because of his national origin. As a result, the Plaintiff has failed to establish an adverse employment action because he has failed to establish three of the four required elements of a *prima facie* case with respect to any such hypothetical promotional opportunity.

In <u>Velez</u> v. <u>Janssen Ortho, LLC</u>, – F. 3d –, 2006 WL 3114229 (1ˢᵗ Cir. 2006) ("<u>Velez</u>") the First Circuit has unequivocally held that, in order to establish a *prima facie* case of discrimination, a plaintiff must establish that he applied for a specific, available position for which he was qualified and that he was rejected. Establishing these three elements of a *prima facie* case of discrimination in employment is required in order to demonstrate there was an

"adverse employment action" which is a necessary prerequisite to maintenance of a

discrimination claim.  As recently explained by the First Circuit in the context of a failure to hire

claim based on unlawful retaliation:

> "Precedent in the analogous context of failure-to-promote claims also reflects the requirement that plaintiffs asserting discriminatory retaliation must show that they applied for a specific vacant position for which they were qualified, and that they did not get the job.  *See Brown v. Coach Stores, Inc.* 163 F.3d 706, 711-712 (2d Cir. 1998) (holding that a plaintiff claiming a failure-to-promote must show that she "applied for a specific position or positions ... rather than merely asserting that on several occasions she or he generally requested promotion.");
>
> . . .
>
> "This specificity requirement is sensible and fair.  An open-ended request for employment should not put a burden on an employer to review an applicant's generally stated credentials any time a position becomes available, at the risk of a Title VII claim.
>
> . . .
>
> "In short, we do not believe an employer is obliged to defend its decision not to hire an individual for a position for which she has not specifically applied."

Id. at *4-5.

In the present case, the Plaintiff has not presented any evidence that he, in fact, applied

for any specific, available position for which he was qualified and that he was rejected.  Thus, he

has failed to demonstrate that he was subjected to an adverse employment action and his claims

of denial of promotions to unspecified positions should be dismissed.  Velez, supra, 2006 WL

3114229 *6 (". . .[In] order to establish an adverse employment action, [a plaintiff must] make a

prima facie showing that (1) she applied for a particular position (2) which was vacant and (3)

for which she was qualified.  In addition, she must show that she was not hired for that

position.").

The Plaintiff suggests that his failure to be designated as an NGL in 2003 foreclosed his

being considered for promotion.  See Opposition at 3.  Even if this were true, which it is not,

then Plaintiff would still not be relieved from his obligation nonetheless to identify specific

available positions to which he would have applied.  See Brown v. Coach Stores, Inc., 163 F.3d

706, 711 (2d Cir. 1998) (holding that where one fails to apply for specific positions because it

"would have been futile" the plaintiff is still required "to allege the specific positions to which

she would have applied had the alleged discriminatory practices not existed.").

    While Plaintiff may have expressed a general interest in being promoted to a vice

presidency level position, such general expressions of interest fail to satisfy the requirement that

a plaintiff must at a minimum demonstrate that he applied for a specific, available position for

which he was qualified.  See Velez, supra, 2006 WL 3114229 at *5 (a general expression of

interest in a position "is not the application for a discrete, identifiable position required under . . .

Title VII."); Petrosino v. Bell Atlantic, 385 F.3d 210, 227 (2d Cir. 2004) (same).

    The Plaintiff's claim based on the denial of promotions to unidentified positions must be

dismissed because of the Plaintiff's failure to establish any adverse employment actions.

### D.    The Plaintiff's Factual Predicate For His Argument About Promotions is Not Based on the Established Facts.

    As a factual predicate to his argument on denial of promotions, the Plaintiff incorrectly

asserts that (1) he was "never considered" by the FLT for an NGL designation because his

immediate supervisor, Mr. Ruben, did not recommend him, and (2) without such NGL

designation "a qualified candidate would not be part of the pool of eligible candidates for

promotions to a senior management position."  See Opposition at p.3.  Neither alleged fact is true

and both are contradicted by the undisputed facts or not supported in the record.

    With respect to whether the Plaintiff was never considered by the FLT because his

supervisor, Mr. Ruben, did not recommend him, the evidence in the record clearly establishes

that such a recommendation was not necessary to be considered by the FLT for designation as an NGL.  <u>See</u> Ex. 3, Dep. of Asad Husain at p.134.[3]  The citation by the Plaintiff in his Opposition at page 3 to Ex. 5, Cramb Aff ¶25, in support of this incorrect factual assertion does not say that the Plaintiff "was never considered" by the FLT because his supervisor did not propose him.  More significantly, the undisputed facts establish that the Plaintiff was considered by the FLT for designation.  <u>See</u> Ex. 5, Affidavit of Cramb, ¶27, in which he explains that during the 2003 talent review by the FLT "several members of the FLT expressed concern about Mr. Garza's performance on Project Renaissance, including his leadership abilities."  This fact is not disputed by the Plaintiff.  <u>See</u> ¶49 of Undisputed Facts and Plaintiff's Rule 56.1 Statement of Disputed Facts.  In short, the Plaintiff's asserted factual premise is a false presentation of the facts, *i.e.* despite his supervisor's reticence, the Plaintiff was, in fact, considered by the FLT in 2003 for designation as an NGL.

The Plaintiff's assertion that his failure to be designated as an NGL meant that he would not be considered for future promotions is not based on any facts in the record.  The citation by the Plaintiff for this proposition in his Opposition at page 3 to Ex. 1 Deposition of Mora 113:20-23 is a mischaracterization of the facts.  At this portion of the Plaintiff's deposition, the Plaintiff merely says that having NGL status meant you could be considered for future leadership positions, but it does not say that other persons who were not designated as NGL's would not be eligible or considered for promotion or would not be selected for promotional opportunities for which they were qualified.  Nothing in the facts supports such a conclusion.  In fact, the Plaintiff

---

[3]  "Q.  Did Claudio Ruben express an opinion that Mr. Garza Mora was a Next Generation Leader?

A.  No, he did not.

Q.  If the immediate supervisor does not express that opinion, is there opportunity for other members of the team to raise up that individual and have discussion?

A.  Absolutely."  Ex. 3, Dep. of Husain at p. 134

himself certainly did not think that he was ineligible for promotion because, knowing he was not selected as an NGL in 2003, he nonetheless applied for a promotion in 2004. See Ex. 9.

The Plaintiff's factual predicates for arguing that he was deprived of promotional opportunities because of his failure to be designated as an NGL are simply untrue and not established in the record, despite the fact that the Plaintiff had plenty of opportunity for discovery.

## V.     PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CASE WITH RESPECT TO HIS RATE OF PAY.

The Plaintiff's claim with respect to his rate of pay as of the time he became the Director of Project Renaissance fails because he has failed to establish a *prima facie* case of wage discrimination.

To establish a *prima facie* case of wage discrimination, the Plaintiff must present evidence that he was paid less than other employees outside of his protected class and that his job functions and responsibilities were substantially similar to the job functions and responsibilities of the higher paid persons outside such class. Rodriguez v. Smithkline Beecham, 224 F.3d 1, 8 (1st Cir. 2000); see also Rodriguez v. Smithkline Beecham, 62 F. Supp. 2d 374, 383 (D. P.R. 1999) (District Court opinion setting forth elements of a *prima facie* case of wage discrimination under Title VII as approved on appeal by the First Circuit.).

Plaintiff's sole assertion to establish his wage claim is that some persons hired onto Project Renaissance got raises at that time.[4] See Opposition at pp. 9-10. However, he offers no evidence whatsoever that these employees had job functions or responsibilities that were substantially similar to his or even that they were paid at a higher rate of pay. This absence of

---

[4] The record also establishes that Mr. Ruben, the other leader of Project Renaissance who is not Mexican, did not get a raise in pay when appointed. See Ex. 4 Ruben Dep. at 65; Ex. 6. Ruben Aff. at ¶9.

evidence is fatal to his claim.  See Scott v. University of New Hampshire, 2004 WL 235258 at

*3 (D. N.H. 2004) (dismissing disparate treatment claim based on pay under Title VII for failure

to make out a *prima facie* case because "she has neither produced nor alleged any facts

demonstrating that she was paid less than other similarly situated employees").[5]

### VI.    THE 2003 DEVELOPMENT PLAN FOR THE PLAINTIFF TO IMPROVE HIS COMMUNICATION SKILLS IS NOT AN ADVERSE EMPLOYMENT ACTION.

The Plaintiff claims that the part of his development plan for 2003 which listed as a

developmental activity for him for 2004 to seek to improve his communication skills by

improving his accent and fluency constituted invidious discrimination.  See Opposition, pp. 11-

13.  This claim fails because this training activity for the Plaintiff was not an adverse

employment action.

To establish a *prima facie* case of invidious discrimination requires demonstrating that

the action of the employer is a "materially adverse employment action."  See Blackie v. State of

Maine, 75 F.3d 716, 725 (1st Cir. 1996) (For employment discrimination cases "premised on

disparate treatment, it is essential for the plaintiff to show that the employer took a materially

adverse employment action against him.").  The inclusion in both his 2002 and 2003 reviews of

planned self-improvement activity to help the Plaintiff with his communication and leadership

skills was consistent with his annual evaluation each year as set forth in the portion on

competency assessment where it is noted that both the Plaintiff and the manager agreed that in

the area of "communication" there was a developmental need.  See Plaintiff's Exhibit A and C at

Part II.  The 2003 review points out that "Eduardo needs to communicate more and better during

meetings in order to further develop his public persona."  See Plaintiff's Exhibit A.  Gillette at its

---

[5] The case of Rowlett v. Anheuser Busch, Inc., 832 F. 2d 194 (1st Cir. 1987), cited by Plaintiff at p. 9-10 of his Opposition, also confirms this element of a wage claim because the facts showed the Plaintiff was in a job with responsibilities and functions substantially similar to two other shift foremen who received higher pay increases.

own expense hired an executive coach to work with the Plaintiff to assist him to improve his communication and leadership skills.  See ¶¶ 32-33.

Establishing a self-improvement program for the Plaintiff or anyone else to help improve skills, such as communication skills, is simply not an adverse employment action.

### VII.    PLAINTIFF HAS NOT PRESENTED EVIDENCE THAT ESTABLISHES PRETEXT IN CONNECTION WITH HIS REMOVAL FROM PROJECT RENAISSANCE.

To avoid a summary judgment the Plaintiff was required to present some substantial evidence that the non-discriminatory reason set forth by Mr. Cramb for his removal of the Plaintiff from Project Renaissance was merely a lie or a sham proffered by him to cover up an invidiously discriminatory motive based on the fact that the Plaintiff is from Mexico.  This, the Plaintiff has utterly failed to do.

Pretext cannot be demonstrated by evidence that merely puts in issue whether a particular adverse employment decision was unjust, incorrect, unsound or even irrational.  See Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir.), cert. denied 504 U.S. 985 (1992) ("Courts may not sit as super personnel departments; assessing the results – or even the rationality – of employers' non-discriminatory business decisions"); Gray v. New England Tel. & Tel. Co., 792 F.2d 251, 255 (1st Cir. 1986) ("It is not enough for the plaintiff to show that the employer made an unwise business decision, or unnecessary personnel move.  Nor is it enough to show that the employer acted arbitrarily or with ill will.").[6]  Rather, the Plaintiff must present evidence that the non-discriminatory reason provided by the Gillette manager for his employment decision was not really believed by that Gillette manager, but was a lie and a sham, proffered by the manager to

---

[6] See also Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 56 (2005) (". . . [o]ur task is not to evaluate the soundness of the [employer's] decision making, but to ensure it does not mask discriminatory animus."); Lewis v. Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, 766, (1986) ("The reasons given for a decision may be unsound or even absurd, but if they are not discriminatory and if the plaintiff does not prove they are pretexts, the plaintiff cannot prevail.").

mask his unlawful discriminatory animus.  See Mesnick v. General Electric Co., supra, 950 F.2d at 825 ("In assessing pretext, a court's 'focus must be on the perception of the decisionmaker', that is, whether the employer believed its stated reason to be credible. . . .It is not enough for a plaintiff to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive:  [unlawful] discrimination."); Joyal v. Hasbro, Inc., 380 F.3d 14, 19 (1st Cir. 2004) (applying Massachusetts law) "[The plaintiff] has pointed to nothing that would entitle a jury to find that [the employer] disbelieved the reasons it gave . . ..");.[7]

Summary judgment is appropriate, if there is no evidence to suggest that the non-discriminatory reason of the manager was not his good faith conclusion and does not fall within "the business judgment rule."  See Brunner v. Stone & Webster Eng'g Corp., 413 Mass. 698, 704 (1992) (affirming summary judgment because ". . . a good faith judgment was made by those with the responsibility to decide . . ."); Rathbun v. Autozone, Inc., 361 F.3d 62, 75 (1st Cir. 2004) ("[W]e think the [employer's] choice comes within the sweep of the business judgment rule."). Evidence of pretext must be strong enough to demonstrate that the employment decision was obviously or manifestly unsupported or wholly unbelievable.  See Ruiz v. Posadas De San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1997) ("[T]he 'evidence must be of such a strength and quality as to permit a reasonable finding that the . . . [termination] was obviously or manifestly unsupported.'"); Lewis v. Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, 765 (1986) (". . . [T]he plaintiff must prove that the explanation given by the employer is a pretext, that is, lacks reasonable support in evidence or is wholly disbelievable.").

---

[7] Feliciano De La Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 7 (1st Cir. 2000) ("In evaluating whether [the employer's] stated reason for firing her was pretextual, the question is not whether [the plaintiff] was actually performing below expectations, but whether [the employer] believed that she was."); Engler v. C.R. Bard, Inc., 1997 WL 136249 (D. Mass.) (". . . [T]he issue is . . . whether [the managers] lied in this instance for the purpose of concealing a discriminatory animus.").

It is undisputed by the Plaintiff that he and Mr. Ruben were two senior leaders of Project Renaissance, a $50 million project to revise Gillette's worldwide financial planning and reporting systems. ¶¶ 15, 16, 21, 26, 27.  It is also undisputed that by March, 2004, it was known that the Project would miss critical deadlines, would miss its "go live" date and was estimated to have a projected cost overrun in excess of $10 million which required approval of the CEO and Board of Directors.  ¶¶ 64-69.  It is undisputed that Deloitte Consulting was hired to assess the status of the Project and concluded that the Project had "not uniformly produced high quality deliverables" and the team was "top heavy." ¶76.  The Deloitte Report recommended that Gillette "identify and empower a single project leader" and warned that without change it was "highly likely" that Gillette would "continue to miss committed dates" and "even fall short of original project goals." ¶¶76, 77 and Ex. 15 at p.4.

As a result of the delays, budget overruns and his review of the findings and recommendations in the Deloitte Report, Mr. Cramb concluded that in order for the Project to succeed, its leadership had to be changed. ¶ 80.  As a result, Mr. Cramb, as CFO, removed both of the Project's two leaders:  the Plaintiff and Mr. Ruben.  ¶ 80.  With respect to ¶ 80, the Plaintiff disputes only whether the Deloitte Report was a basis for his removal because in his judgment the problem was the structure of the Project and not the implementation.  See Plaintiff's Rule 56.1 Statement at ¶ 80.  He does not, however, dispute that Deloitte made its observations and recommendations or that Mr. Cramb believed that the problems were such that new leadership was necessary and, as a result, removed both the Plaintiff and Mr. Ruben.  In short, there is no evidence whatsoever that suggests that Mr. Cramb did not believe that to assure the Project's success that he should change its leadership and remove the two leaders.  As a result, there is no evidence of pretext.

The Plaintiff's only argument is that despite the Project's problems it does not "translate into a conclusion that the Plaintiff's job performance was unsatisfactory."  Opposition at p. 16. This, however, is nothing more than challenging the fairness of Mr. Cramb's conclusion and belief which is insufficient to establish pretext.  Mr. Cramb did not even have to conclude that the Plaintiff's job performance was unsatisfactory.  The cost overruns, numerous delays and lack of uniformly high quality deliverables and the recommendation of Delloite to make changes in the leadership, none of which is disputed, is sufficient to establish Cramb's decision to replace the two leaders was a good faith business decision, well within the "business judgment rule." There is simply no evidence that puts in issue, regardless of whether the problems were or were not caused by the poor performance of the Plaintiff, whether Mr. Cramb in light of those problems and the recommendations of Deloitte did not honestly believe that he should change the leadership of the Project.

The Plaintiff has proffered no evidence from which a jury would conclude that the non-discriminatory business reason articulated by the Mr. Cramb for his decision was disbelieved by him and a mere lie or sham to hide his invidious discrimination against the Plaintiff because he is from Mexico.  Mr. Cramb's reason has reasonable support in the evidence and is not manifestly or obviously unsupported or wholly disbelievable.  There is no evidence of pretext.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendant's motion for summary

judgment and dismiss the Complaint in its entirety with prejudice.

Respectfully submitted,

THE GILLETTE COMPANY

By its attorneys,

/s/ Anthony D. Rizzotti
Anthony D. Rizzotti (BBO# 561967)
Christine A. Phipps (BBO# 658942)
David C. Potter (BBO#644610)
Ropes & Gray LLP
One International Place
Boston, MA  02110-2624
(617) 951-7000

Date:   December 4, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified in the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-registered participants (if any) on
December 4, 2006.

Date:  December 4, 2006

/s/  David C. Potter
David C. Potter