UNITED STATED DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDUARDO GARZA MORA,<br><br>    Plaintiff,<br><br>v.<br><br>THE GILLETTE COMPANY,<br><br>    Defendant. | Civil Action No. 05-11651-RCL |

**DEFENDANT'S REPLY MEMORANDUM OF LAW**

**I.     CLAIMS NOT ADDRESSED IN THE OPPOSITION ARE WAIVED.**

Under the "raise or waive" rule, Plaintiff has waived all claims other than those addressed in his Opposition. See Rocafort v. IBM Corp., 334 F.3d 115, 121-22 (1st Cir. 2003) (a party "has a duty to incorporate all relevant arguments in the papers that directly address a pending motion" and under the "well-established 'raise-or-waive' rule," a litigant waives all claims not adequately addressed as part of his summary judgment argument); see also Grenier v. Cyanimid Plastics, Inc., 70 F.3d 667, 672 (1st Cir. 1995).

The Opposition addresses only the following claims:  (1) the failure to be promoted to unidentified positions; (2) the failure to receive a salary increase in April 2002;  (3) an allegedly unjustified requirement that Plaintiff correct his accent "so that people could understand him," see Opp. at 11; and (4) the removal of Plaintiff as Director of Project Renaissance in March 2004.  Thus, other potential claims have been waived by Plaintiff.  See Iverson v. City of Boston, 452 F.3d 94, 103 (1st Cir. 2006) ("[T]he raise-or waive rule [prevents] litigants from gaming the system by seeding complaints with Delphic references in the hope of facilitating an escape should the district court's ruling on their advertised claims fail to suit.").

**II.    SOME OF PLAINTIFF'S CLAIMS ARE TIME-BARRED.**

Under Title VII and Chapter 151B a timely filing of an administrative charge is a prerequisite to filing a civil action. See Silvestris v. Tantasqua Reg'l Sch. Dist., 446 Mass. 756, 766 (2006); Noviello v. City of Boston, 398 F.3d 76, 85 (1st Cir. 2005). To be timely the administrative charge must be filed within 300 days of the allegedly discriminatory act. See Mass. Gen. L. c. 151B §5; 42 U.S.C. §2000e-5 (e) (1). Plaintiff filed his administrative charge with the MCAD and the EEOC on December 9, 2004. (¶ 116).[1] See Ex. 16. Plaintiff's filing is timely only as to those acts which occurred after February 21, 2004. Therefore, none of the following claims are timely: (1) the failure to get a raise in pay in 2002, (2) the failure to be designated as an NGL in 2003, and (3) participation in a plan designed to improve communication skills in 2003.

The "continuing violation" rule does not apply. To establish a continuing violation of a serial nature requires "an interlinked succession of related events, stemming from a common discriminatory animus . . . ." where one of the allegedly discriminatory acts occurs within the limitation period. See Ocean Spray Cranberries, Inc. v. MCAD, 441 Mass. 632, 643 n.14 (citations omitted). Under Title VII discrete discriminatory acts are simply time barred, if untimely. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

Plaintiff suggests that his removal by Mr. Cramb from the position of Director of Project Renaissance in 2004 is the timely alleged discriminatory act that anchors his untimely claims. See Opp. at p. 17. However, this removal is a separate and distinct act unrelated to any prior untimely claims. Plaintiff places the blame for his three time-barred claims on the alleged discriminatory animus of Mr. Ruben. See Opp. at pp. 10 (pay), 11 (accent correction), and 19

---

[1] Citations to "¶ ___" refer to Defendant's Statement of Material Facts of Record as to Which There Is No Genuine Issue To Be Tried. Citations to "Ex. ___" refer to the Appendix of Defendant's Exhibits to its Motion for Summary Judgment.

(NGL). However, he was removed by Mr. Cramb from the position of Project Director. There is no common discriminatory animus that links Mr. Cramb's decision to remove Plaintiff in 2004 with any allegedly discriminatory prior actions by Mr. Ruben in 2002 or 2003.

### III.    CLAIMS NOT IN THE FILED CHARGES MUST BE DISMISSED.

Under Title VII and Chapter 151B the scope of a judicial complaint is limited to the claims raised in the administrative charge or claims reasonably related to such claims. See Jorge v. Rumsfeld, 404 F. 3d 556, 565 (1st Cir. 2005); Nguyen v. University of Mass., 66 Mass. App. Ct. 276, 282 (2006). Plaintiff's administrative charge sets forth only a general assertion of national origin discrimination with respect to unidentified alleged promotional opportunities. See Ex. 16. As a result, Plaintiff may not assert judicial claims that he was demoted, failed to get a salary increase, and was required to improve his communication skills because they are clearly not encompassed by his administrative charge relating to promotions or by any investigation that would reasonably be expected to grow out of a failure to promote charge.

### IV.    PLAINTIFF HAS FAILED TO ESTABLISH A *PRIMA FACIE* CASE WITH RESPECT TO ANY PROMOTIONS.

#### A.    Plaintiff's Contention that He Need Not Demonstrate that He Applied For Any Promotional Opportunity is Incorrect.

Relying on Hill v. Forum Health, 167 Fed. Appx. 448 (6th Cir. 2003), Plaintiff contends that, if an employer does not post a position, then a plaintiff's *prima facie* case is softened such that plaintiff need not show that he applied for the position. See Opp. at 6-7. This proposition is inapplicable, and, in any event, this rule does not relieve a plaintiff from establishing the other required elements for a *prima facie* case. Plaintiff's reliance on this case is misplaced because its holding is applicable only to cases in which a plaintiff does not know of the open positions at issue or the employer lacks a mechanism for expressing interest in such positions. Rodriguez v. FedEx Freight East, Inc., 2006 WL 1522584, at *7 (E.D. Mich. May 30, 2006); Dews v. A.B

Dick Co., 231 F.3d 1016, 1022 (6th Cir. 2000).  Neither is the case here.  Plaintiff acknowledges that he knew about the Oral Care Position for which he applied in 2004 and that he applied for it by submitting his resume to his supervisor.  See Ex. 1, Plaintiff's Dep. I at 93-95; Ex. 9.  As a result, the Sixth Circuit exception is not applicable.  See Donahoo v. Ohio Dept. of Youth Servs., 237 F. Supp. 2d 844, 864-866 (N.D. Ohio 2002) (Exception is inapplicable because the plaintiff knew about the vacancy.).  Secondly, even under Sixth Circuit precedent, Plaintiff still must establish the other two elements of a *prima facie* case, *i.e.*, he must identify an available position for which he was qualified and show that someone with qualifications similar to his was hired for the position.  Hill, v. Forum Health 167 Fed. Appx. at 452-453; see also Dews v. A.B Dick Co., supra 231 F.3d  at 1022.  This he has failed to do.

        **B.**        **Plaintiff Did Not Establish the Elements of a *Prima Facie* Case with Respect to Promotion to the Oral Care Position.**

Plaintiff's *prima facie* case with respect to his application for a promotion to the Oral Care Position fails because he cannot establish (1) the second element, *i.e.* there was a vacant position for which he was qualified; (2) the third element, *i.e.* he was rejected; or (3) the fourth element, *i.e.* the employer sought to fill the position with persons with qualifications similar to his.  See Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 875(1984).  First, Plaintiff does not dispute that, at the time he applied, the Oral Care Position was no longer vacant because a decision had been made to hire Glenn Brack into the position.  See ¶ 59 of Undisputed Facts and Plaintiff's Rule 56.1 Statement of Disputed Facts.  Secondly, Plaintiff has not shown that he was qualified for the Oral Care Position and has admitted that he does not have any knowledge of what the qualifications were for the position.  See Ex. 9 ("I am not aware of what kind of general qualifications has been requested for these kinds of positions.").  Thirdly, Plaintiff cannot establish that he was rejected for the position.  Finally, there is no evidence that Gillette sought

persons with qualifications similar to his. In fact, at his deposition, Plaintiff admitted that he had no knowledge as to the qualifications of the successful applicant and no specific information as to how his qualifications compared to his. See Ex. 1, Plaintiff's Dep. at 102.

>    C.   **Plaintiff Has Failed to Establish a *Prima Facie* Case of Discrimination With Respect to Any Unidentified Promotional Opportunity.**

Plaintiff has failed to identify any other specific positions into which he claims he was not promoted because of his national origin. As a result, Plaintiff has failed to establish a *prima facie* case. In Velez v. Janssen Ortho, LLC, 467 F.3d 802 (1st Cir. 2006) ("Velez") the First Circuit has unequivocally held that, in order to establish a *prima facie* case of discrimination, a plaintiff must establish that he applied for a specific, available position for which he was qualified and that he was rejected. As recently explained by the First Circuit:

> "Precedent in the analogous context of failure-to-promote claims also reflects the requirement that plaintiffs asserting discriminatory retaliation must show that they applied for a specific vacant position for which they were qualified, and that they did not get the job."

Id. at 807; see also Petrosino v. Bell Atlantic, 385 F.3d 210, 227 (2d Cir. 2004).

In the present case, Plaintiff has presented no evidence that he, in fact, applied for any specific, available position for which he was qualified and that he was rejected. Thus, he has failed to demonstrate that he was subjected to an adverse employment action and his claims of denial of promotions to unspecified positions should be dismissed. Velez, supra, 467 F.3d at 808 ("...[I]n order to establish an adverse employment action, [a plaintiff must] make a prima facie showing that (1) she applied for a particular position (2) which was vacant and (3) for which she was qualified. In addition, she must show that she was not hired for that position.").

Plaintiff suggests that his failure to be designated as an NGL in 2003 foreclosed his being considered for promotion. See Opp. at 3. Even if this were true, which it is not, then Plaintiff would still not be relieved from his obligation nonetheless to identify specific available positions

to which he would have applied.  See Brown v. Coach Stores, Inc., 163 F.3d 706, 711 (2d Cir. 1998) (holding that where one fails to apply for specific positions because it "would have been futile" the plaintiff is still required "to allege the specific positions to which she would have applied had the alleged discriminatory practices not existed.").

### D. Plaintiff's Factual Predicates Are Not Established.

As a factual predicate to his argument on denial of promotions, Plaintiff incorrectly asserts that (1) he was "never considered" by the FLT for an NGL designation because his supervisor, Mr. Ruben, did not recommend him, and (2) without such NGL designation "a qualified candidate would not be part of the pool of eligible candidates for promotions to a senior management position."  See Opp. at p.3.  Neither alleged fact is supported in the record.

With respect to whether Plaintiff was never considered by the FLT for designation as a NGL because his supervisor, Mr. Ruben, did not recommend him, the evidence in the record clearly establishes that such a recommendation was not necessary and that, in fact, the FLT did consider him.  See Ex. 3, Dep. of Asad Husain at p.134.[2]  The citation by Plaintiff in his Opposition at page 3, Ex. 5, Cramb Aff ¶25, in support of this incorrect factual assertion does not say that Plaintiff "was never considered" by the FLT because his supervisor did not propose him.  Plaintiff was considered by the FLT for designation.  See Ex. 5, Affidavit of Cramb, ¶27, in which Mr. Cramb explains that during the 2003 talent review by the FLT "several members of the FLT expressed concern about Mr. Garza's performance on Project Renaissance, including his leadership abilities."  This fact is not disputed by Plaintiff.  See ¶49 of Undisputed Facts and

---

[2] "Q.  Did Claudio Ruben express an opinion that Mr. Garza Mora was a Next Generation Leader?

A.  No, he did not.

Q.  If the immediate supervisor does not express that opinion, is there opportunity for other members of the team to raise up that individual and have discussion?

A.  Absolutely." Ex. 3, Dep. of Husain at p. 134

Plaintiff's Rule 56.1 Statement of Disputed Facts.  In short, Plaintiff's asserted factual premise is a false presentation of the record facts.

Plaintiff's assertion that his failure to be designated as an NGL meant that he would not be considered for future promotions is also not based on any facts in the record.  The citation by Plaintiff for this proposition in his Opposition at page 3 to Ex. 1, Deposition of Mora at p. 113:20-23 is a mischaracterization of the facts.  Plaintiff merely says that having NGL status meant you could be considered for future leadership positions, but it does not say that other persons who were not designated as NGL's would not be eligible or considered for promotion or would not be selected for promotional opportunities for which they were qualified.  Nothing in the facts supports such a conclusion.  In fact, Plaintiff himself certainly did not think that he was ineligible for promotion because, knowing he was not selected as an NGL in 2003, he nonetheless applied for a promotion in 2004.  See Ex. 9.

## V.    NO *PRIMA FACIE* CASE IS SHOWN REGARDING PAY.

To establish a *prima facie* case of wage discrimination, Plaintiff must present evidence that he was paid less than other employees outside of his protected class and that his job functions and responsibilities were substantially similar to the job functions and responsibilities of the higher paid persons.  Rodriguez v. Smithkline Beecham, 224 F.3d 1, 8 (1st Cir. 2000).

Plaintiff's sole assertion to establish his wage claim is that some persons hired onto Project Renaissance got raises at that time.  See Opp. at pp. 9-10.  He offers no evidence whatsoever that these employees had job functions or responsibilities that were substantially similar to his or even that they were paid at a higher rate of pay.  This absence of evidence is fatal to his claim.  See Scott v. University of New Hampshire, 2004 WL 235258 at *3 (D. N.H. 2004) (dismissing pay claim because the plaintiff "has neither produced nor alleged any facts demonstrating that she was paid less than other similarly situated employees.").

### VI. A PLAN TO IMPROVE COMMUNICATION SKILLS IS NOT AN ADVERSE EMPLOYMENT ACTION.

To establish a *prima facie* case of invidious discrimination requires showing that an employer's action is a "materially adverse employment action." See Blackie v. State of Maine, 75 F.3d 716, 725 (1st Cir. 1996). In the portion of Plaintiff's 2002 and 2003 reviews on competency assessment it is noted that both Plaintiff and the manager agreed that in the area of "communication" there was a developmental need. See Plaintiff's Exh. A and C at Part II. The 2003 review points out that "Eduardo needs to communicate more and better during meetings in order to further develop his public persona." See Plaintiff's Exh. A. Gillette at its own expense hired an executive coach to work with Plaintiff to assist him to improve his communication and leadership skills. See ¶¶ 32-33. Establishing a self-improvement program for an employee to help improve skills, such as communication, is not an adverse employment action.

### VII. THERE IS NO EVIDENCE OF PRETEXT IN CONNECTION WITH PLAINTIFF'S REMOVAL FROM PROJECT RENAISSANCE.

Plaintiff has presented no evidence of pretext to show that Mr. Cramb's reason for his removal of Plaintiff from Project Renaissance was merely a lie proffered by him to cover up an invidiously discriminatory motive.

Pretext cannot be demonstrated by evidence that merely puts in issue whether a particular adverse employment decision was unjust, incorrect, unsound or even irrational. See Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir.), cert. denied 504 U.S. 985 (1992); Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 56 (2005). Rather, Plaintiff must present evidence that the non-discriminatory reason provided by the Gillette manager for his employment decision was not really believed by that Gillette manager, but was a lie and a sham, proffered by the manager to mask his unlawful discriminatory animus. See Mesnick v. General Electric Co., supra, 950 F.2d at 825 ("In assessing pretext, a court's 'focus must be on the perception of the decisionmaker',

that is, whether the employer believed its stated reason to be credible. . . .It is not enough for a plaintiff to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: [unlawful] discrimination."); Joyal v. Hasbro, Inc., 380 F.3d 14, 19 (1st Cir. 2004) ("[The plaintiff] has pointed to nothing that would entitle a jury to find that [the employer] disbelieved the reasons it gave . . ..");[3] Brunner v. Stone & Webster Eng'g Corp., 413 Mass. 698, 704 (1992) (affirming summary judgment because ". . . a good faith judgment was made by those with the responsibility to decide . . ."); Rathbun v. Autozone, Inc., 361 F.3d 62, 75 (1st Cir. 2004) ("[W]e think the [employer's] choice comes within the sweep of the business judgment rule.").

It is undisputed by Plaintiff that he and Mr. Ruben were two senior leaders of Project Renaissance, a $50 million project to revise Gillette's worldwide financial planning and reporting systems. ¶¶ 15, 16, 21, 26, 27. It is also undisputed that by March, 2004, it was known that the Project would miss critical deadlines, would miss its "go live" date and was estimated to have a projected cost overrun in excess of $10 million which required approval of the CEO and Board of Directors. ¶¶ 64-69. It is undisputed that Deloitte Consulting was hired to assess the status of the Project and concluded that the Project had "not uniformly produced high quality deliverables" and the team was "top heavy." ¶76. The Deloitte Report recommended that Gillette "identify and empower a single project leader" and warned that without change it was "highly likely" that Gillette would "continue to miss committed dates" and "even fall short of original project goals." ¶¶76, 77 and Ex. 15 at p.4. Based on these undisputed facts, Mr. Cramb

---

[3] Feliciano De La Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 7 (1st Cir. 2000) ("In evaluating whether [the employer's] stated reason for firing her was pretextual, the question is not whether [the plaintiff] was actually performing below expectations, but whether [the employer] believed that she was."); Engler v. C.R. Bard, Inc., 1997 WL 136249 (D. Mass.) (". . . [T]he issue is . . . whether [the managers] lied in this instance for the purpose of concealing a discriminatory animus.").

concluded that in order for the Project to succeed, its leadership had to be changed and he removed both Plaintiff and Mr. Ruben from the Project. ¶ 80. Mr. Cramb's decision to replace the two leaders was a good faith business decision, well within the "business judgment rule", based on an honest belief that it was necessary to change the leadership of the Project to assure its success. Plaintiff has proffered no evidence from which a jury could conclude that Mr. Cramb did not believe the reasons he has articulated for removing Plaintiff. Mr. Cramb's reasons have reasonable support in the evidence and are not "obviously or manifestly unsupported." See Ruiz v. Posades De San Juan Assocs., 124 F. 3d 243, 248 (1st Cir. 1997). There is simply no evidence of pretext.

## CONCLUSION

The Court should grant Defendant's motion for summary judgment and dismiss the Complaint in its entirety with prejudice.

THE GILLETTE COMPANY

By its attorneys,

/s/ Anthony D. Rizzotti
Anthony D. Rizzotti (BBO# 561967)
David C. Potter (BBO#644610)
Ropes & Gray LLP
One International Place
Boston, MA 02110-2624
Dated: January 23, 2007        (617) 951-7000

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants (if any) on January 23, 2007.

Date: January 23, 2007        /s/ David C. Potter
                              David C. Potter